POWERS, Respondent, v. HUNT-WESSON FOODS, INC., Appellant.

*No. 130. Submitted under sec. (Rule) 251.54 June 5, 1974.— Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 393.)

The cause was submitted for the appellant on the briefs of *Walter Eugene Brown* of Milwaukee, and for the respondent on the brief of *Hersh & Stupar, S. C.,* and *Morton Gollin,* all of Milwaukee.

HALLOWS, C. J.  Hunt argues there is not sufficient evidence to sustain the verdict finding it liable for the injuries sustained by Powers.  Hunt raises two other questions, *i.e.,* the verdict is contrary to law or evidence and it was error not to grant its motion to dismiss and for a directed verdict.  These latter two questions are premised upon the insufficiency of the evidence.  Powers was employed as a cook at Curley's Restaurant and it was his duty to make noon lunches and to order food stuff necessary therefor.  He regularly ordered food stuff from Dairy State Butter and Egg Company which included a case of Hunt's ketchup per week.  The ketchup was delivered in a sealed cardboard carton with sheets of cardboard separating the 24 bottles contained therein.  The cartons were carried into the basement storeroom by the deliveryman and placed on the floor.  The case was opened and inspected and the bottles placed on the shelf in the storage room by the porter of Curley's.  Each day the porter or a waitress would carry as many bottles of ketchup as were needed from the storage room and place them on a shelf upstairs in the restaurant between the grill and the lunch counter.

On Saturday, May 7, 1966, while engaged in making the noon lunch, Powers took a full bottle of Hunt's ketchup from the shelf and tried to turn the cap to open the bottle; he was unsuccessful and so tapped the cap end of the bottle twice lightly on his cutting board, then tried to turn the cap again but was unsuccessful.  He then light-

ly tapped the bottom of the bottle with the palm of his hand and "the bottom of the bottle went right up inside and the bottle went in my hand and cut it." Powers testified he sustained a circular cut in the hand, and in tapping the bottom of the bottle he exercised no more force than any customer would in tapping the bottom of the bottle to cause the ketchup to run out. Powers was taken to the hospital and upon his return he and the porter visited the storeroom and checked the cardboard box from which the bottle had been taken. The box was not damaged. Powers checked the top, bottom and sides and saw no marks on the box. The bottle was not produced at trial because upon its cutting Powers it had fallen to the floor and broken in pieces and while he was in the hospital someone cleaned the floor up and threw the broken pieces of the bottle away. The porter also testified to the undamaged case; that none of the bottles appeared broken or damaged when he removed them from the case and there was no drainage in the carton. Neither Hunt nor Dairy State put in any proof at the trial but rested on their motions to dismiss. In submitting the case to the jury, it was stipulated it should be done solely on the theory of strict liability and the *res ipsa loquitur* instruction need not be given. Motions after verdict were denied by the court.

In *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 155 N. W. 2d 55, this court adopted the rule of strict liability in tort as set forth in sec. 402A of Restatement, 2 *Torts* 2d, pp. 347, 348 (at p. 459) :

" 'Sec. 402A **Special Liability of Seller of Product for Physical Harm to User or Consumer.**

" '(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

" '(a) the seller is engaged in the business of selling such a product, and

" '(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

" '(2) The rule stated in subsection (1) applies although

" '(a) the seller has exercised all possible care in the preparation and sale of his product, and

" '(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.' "

In adopting the rule of this section, this court neither accepted nor rejected any of the comments. The rule as stated is broad enough to cover as its basis public policy to support absolute liability or negligence to support strict liability. The court was careful to point out in *Dippel* that the term "strict liability" might be misconstrued as "absolute liability" and, if so, would be a misnomer. It was clearly pointed out that strict liability does not make the manufacturer or seller an insurer nor does it impose absolute liability. Absolute liability is imposed for public policy reasons and admits of no exceptions or defenses. Strict liability in this state at least means negligence as a matter of law or negligence per se, and the effect of the adoption of the rule of strict liability based on this negligence in effect shifts the burden of proof from the plaintiff of proving specific acts of negligence to the defendant to prove he was not negligent in any respect. In this respect, the rule in Wisconsin impliedly qualifies the Restatement of *Torts* 2d in sec. 402A, which states the rule of sub. (1) "applies although (a) the seller has exercised all possible care in the preparation and sale of his product." One must read this section as meaning the Restatement rule in sec. 402A (1) is the starting point and is prima facie liability based on negligence but does not foreclose the defendant from proving he was not negligent.

Consequently, in Wisconsin where we have comparative negligence, many defenses including contributory

negligence and unilateral assumption of risk as a part of contributory negligence are available in determining the apportionment of the negligence by the manufacturer of the alleged defective product and the negligent use made thereof by the consumer. Thus the ordinary rules of causation and defenses applicable to negligence are available under our adoption of the Restatement rule. If this were not so, this court would have abolished the doctrine of comparative negligence which in *Dippel* this court said it would not do. Under the rule of strict liability as adopted in Wisconsin, this court stated what the plaintiff must prove to recover, *i.e.* (p. 460) :

". . . the plaintiff must prove (1) that the product was in defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it."

There is no question from the evidence that the defect in the bottle was a substantial factor in the case of Powers' injuries or that Hunt engaged in the business of selling such product and this was not an isolated or infrequent transaction not related to the principal business of Hunt. Likewise, the ketchup bottle was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when it was sold. This leaves for consideration the question of whether the product was in a defective condition when it left the possession or control of Hunt and whether it was unreasonably dangerous to the user or consumer.

We make no distinction between the ketchup, *i.e.*, the contents of the bottle and the bottle; there was nothing

wrong with the ketchup, but taking the ketchup and the bottle as a unit and the container cannot logically be separated from the contents, Hunt must be responsible for the condition of the bottle. *See* Comment *n* to sec. 402A, Restatement, *Torts* 2d, p. 356. *Dippel* has been followed in numerous decisions of this court; none of them directly controls the issue here.[1] A ketchup bottle not strong enough to stand ordinary usage by the user or consumer is unreasonably dangerous. The jury found Powers was not contributorily negligent in lightly tapping the cover and the bottom of the bottle in order to open the top—that is common practice by consumers. It

---

[1] *Holifield v. Setco Industries, Inc.* (1969), 42 Wis. 2d 750, 168 N. W. 2d 177 (a cause of action in tort based on strict liability in tort as adopted in *Dippel v. Sciano* does not accrue until injury is sustained; consequently, the statute of limitations does not begin to run until the date on which an injury was sustained); *Kemp v. Wisconsin Electric Power Co.* (1969), 44 Wis. 2d 571, 172 N. W. 2d 161 (in an action for damages resulting from injuries arising out of electrical burns suffered by a child whose gasoline powered model airplane which he controlled by cables attached to the model contacted an electrical wire, it was held the rule of strict liability adopted in *Dippel v. Sciano* does not apply to electricity escaping from high-tension transmission lines maintained by defendant); *Netzel v. State Sand & Gravel Co.* (1971), 51 Wis. 2d 1, 186 N. W. 2d 258; *Howes v. Hansen* (1972), 56 Wis. 2d 247, 201 N. W. 2d 825 (the concept of strict tort liability as adopted in *Dippel v. Sciano* should be extended to allow bystander recovery, not merely user or consumer recovery); *Gies v. Nissen Corp.* (1973), 57 Wis. 2d 371, 204 N. W. 2d 519 (under *Dippel v. Sciano,* the negligence of a seller and an alleged joint tort-feasor can be compared); *City of Franklin v. Badger Ford Truck Sales* (1973), 58 Wis. 2d 641, 207 N. W. 2d 866 (where there is no change in a component part but it is merely incorporated into something larger and where the cause of harm or injury to the consumer is found to be a defect in the component part, as to the ultimate user or consumer, the strict liability standard applies to the maker and supplier of the defective component part. Where the component part is subject to further processing or substantial change, or where the causing of injury is not directly attributable to defective construction of the component part, the result might be different).

is also common practice to hit the bottom of the bottle with one's hand to make the ketchup come out or to loosen the top. We think the evidence sustains the finding in the verdict that Powers was not contributorily negligent in the manner in which he attempted to remove the cap. It is not necessary to prove the defective condition by expert testimony in the light of the ordinary experience of mankind with opening ketchup bottles. *Netzel v. State Sand & Gravel Co.* (1971), 51 Wis. 2d 1, 186 N. W. 2d 258.

Hunt argues the jury must have reasoned there was a defect in the bottle from the fact the bottle broke and this was the application of the doctrine of *res ipsa loquitur* as laid down in *Weggeman v. Seven-Up Bottling Co.* (1958), 5 Wis. 2d 503, 93 N. W. 2d 467, 94 N. W. 2d 645, and *Zarling v. La Salle Coca-Cola Bottling Co.* (1958), 2 Wis. 2d 596, 87 N. W. 2d 263. It was expressly stipulated the doctrine of *res ipsa loquitur* would not be the subject of an instruction to the jury. We see no violation of the stipulation. The stipulation was merely that there would be no instruction on *res ipsa loquitur*, not that the jury could not reason along the same lines. With the doctrine of strict liability based on negligence per se, there is no need to apply the doctrine of *res ipsa loquitur* because the doctrine itself places negligence upon the manufacturer. In proving the ketchup bottle was in a defective condition when it left the possession or control of Hunt, Powers had to prove it was in a defective condition when he used it and that condition existed when it left the control of Hunt. The uncontradicted testimony in this case is that when Powers used the bottle, it was in the same condition as when it left the control of Hunt. Since there was no evidence of its being damaged in transit from Hunt to Powers, it is necessary to determine whether the bottle was defective at the time Powers used it. While this court has held a defect in a product cannot be determined solely from the

happening of an unexplained event, we have also held that when the unexplained event is combined with evidence rebutting the existence of other probable causes, such evidence was sufficient to warrant a jury finding a defect. *Netzel v. State Sand & Gravel Co., supra; see also: Jagmin v. Simonds Abrasive Co.* (1973), 61 Wis. 2d 60, 211 N. W. 2d 810. Proof of a defective condition may also consist of making a circumstantial inference. While this inference may be of a *res ipsa loquitur* type as that doctrine is applied to bursting bottle cases, there is a distinction. *See Franks v. National Dairy Products Corp.* (D. C. Texas 1968), 282 Fed. Supp. 528.

Since the evidence in this case negates any other possible cause of the bottle's failure since it left Hunt's control other than the product's own defective condition and since the evidence also shows Powers' use of the bottle was reasonable and in accordance with the usage of mankind and since the other bottles in the carton and in prior cartons had not broken, a circumstantial inference may be drawn by the trier of the fact that the bottle which broke in Powers' hands was defective.[2]

*By the Court.*—Judgment affirmed.

[2] In a case decided by this court just last month, *Schuh v. Fox River Tractor Co.* (1974), 63 Wis. 2d 728, 218 N. W. 2d 279, this court took occasion to comment rather extensively on the defense of misuse. Quoting from *Spruill v. Boyle-Midway, Incorporated* (4th Cir. 1962), 308 Fed. 2d 79, 83, 84, the court emphasized:

". . . 'Intended use' is but a convenient adaptation of the basic test of 'reasonable foreseeability' framed to more specifically fit the factual situations out of which arise questions of a manufacturer's liability for negligence. 'Intended use' is not an inflexible formula to be apodictically applied to every case. Normally a seller or manufacturer is entitled to anticipate that the product he deals in will be used only for the purposes for which it is manufactured and sold; thus he is expected to reasonably foresee only injuries arising in the course of such use.

"However, he must also be expected to anticipate the environment which is normal for the use of his product and where, as here, that

environment is the home, he must anticipate the reasonably foreseeable risks of the use of his product in such an environment. These are risks which are inherent in the proper use for which his product is manufactured."

See also: 2 Frumer, Products Liability, Scope of Strict Liability, pp. 3–297 to 3–301, sec. 16A (4) (d) where it is said that "[i]f the plaintiff can be shown to have used the product in a manner other than its intended use, and particularly if that abnormal use related to the occurrence of the injury, liability should not follow unless the abnormal use was itself foreseeable." (Emphasis supplied.)