KELLER, a minor, by David Monson, his Guardian ad Litem, and another, Plaintiffs-Respondents, v. WELLES DEPARTMENT STORE OF RACINE, and another, Defendants-Appellants: SPERRY, Defendant.†

Court of Appeals

*No. 78–032. Argued December 14, 1978.—Decided January 26, 1979.*
(Also reported in 276 N.W.2d 319.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

The page is almost entirely redacted with black bars. The only visible text is the page number "25" in the top right corner.

26

For the plaintiff-respondent, there was a brief and oral argument by *David M. Monson* and *Duane L. Arena,* of Counsel of Racine.

For the defendants-appellants, there were briefs and oral argument by *James Riordan* of *Kasdorf, Dall, Lewis & Swietlik S. C.* of Milwaukee and *Thomas Knoll* of the Law Offices of *Ronald Piette* of Milwaukee.

Before Moser, P.J., Brown, J., and Bode, J.

BODE, J. This is a products liability case. On October 21, 1971, two and one-half year old Stephen Keller was playing with two year old William Sperry in the basement of the Sperry home. The boys were playing with a gasoline can which had been filled with gasoline by Wayne Sperry, William's father. The can was manufactured by Huffman Manufacturing Company, Inc. (Huffman) and was purchased by Wayne Sperry at Welles Department Store (Welles). The children were near a gas furnace and a hot water heater when gasoline, which they had poured from the can, was ignited. Stephen Keller was severely burned. Although Mrs. Sperry was home at the time of the accident, the two boys were unsupervised.

The plaintiff originally sued the home builder and the manufacturers of the hot water heater and the furnace alleging that the pilot lights in those devices were the ignition source. Those actions were compromised and settled.

The remaining defendants are Huffman and Welles, the manufacturer and retailer, and Mrs. Sperry. The

cause of action against Huffman and Welles is pleaded both in negligence and strict liability. The defendants, Huffman and Welles, moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The motion was denied and an order to that effect was entered on April 14, 1978. The defendants appeal.

The sole issue before this court is whether the complaint states a cause of action against the manufacturer and retailer of a gasoline can, in either strict liability or negligence, for injuries sustained by Stephen Keller resulting from the ignition of gasoline poured from a gasoline can without a child-proof cap.

Since a motion to dismiss for failure to state a claim upon which relief may be granted has replaced the demurrer, Judicial Council Committee's Note, 1974 to sec. 802.06(2), Stats., the rules relating to demurrers are applicable to the new pleading. The pertinent rules relating to the review of orders overruling or sustaining demurrers were set forth in *Weiss v. Holman*, 58 Wis.2d 608, 614, 207 N.W.2d 660, 662–63 (1973), as follows:

> (1) Pleadings are to be liberally construed with a view to substantial justice between the parties and are entitled to all reasonable inferences in favor of the pleadings which may be drawn from the facts pleaded; (2) all material well-pleaded facts are to be taken as true; . . . . [Footnotes omitted.] Cited with approval in *State v. Ross*, 73 Wis.2d 1, 3–4, 242 N.W.2d 210, 211 (1976).

Thus, the complaint is given a liberal construction in favor of stating a cause of action. *Continental Bank & Trust Co. v. Akwa*, 58 Wis.2d 376, 384, 206 N.W.2d 174, 179 (1973). The court is not to be concerned with whether the plaintiff can actually prove the allegations; that task is left to the trier of fact. Instead, a complaint will be upheld against a motion to dismiss on these

grounds when the facts alleged, if proven, would constitute a cause of action. *See International Found. of Emp. Ben. Plans, Inc. v. City of Brookfield,* 74 Wis.2d 544, 549, 247 N.W.2d 129, 131 (1976). The underlying facts alleged are taken as true, and only the legal premises derived therefrom are challenged. *Ritterbusch v. Ritterbusch,* 50 Wis.2d 633, 636, 184 N.W.2d 865, 866 (1971).

In this case, plaintiff attempts to state causes of action both in strict liability and in negligence. Each theory will be considered separately.

STRICT LIABILITY

In *Dippel v. Sciano,* 37 Wis.2d 443, 155 N.W.2d 55 (1967), the Wisconsin Supreme Court adopted sec. 402A of Restatement, 2 *Torts* 2d,[1] thereby accepting the concept of strict liability. The court immediately hastened to add, and has since reiterated, that strict liability makes a manufacturer neither an insurer nor absolutely liable for any harm resulting from the use of his product. *Howes v. Deere & Company,* 71 Wis.2d 268, 273, 238

[1] Sec. 402A. *Special Liability of Seller of Product for Physical Harm to User or Consumer*

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

N.W.2d 76, 80 (1976); *Powers v. Hunt-Wesson Foods, Inc.*, 64 Wis.2d 532, 536, 219 N.W.2d 393, 395 (1974); *Dippel*, 37 Wis.2d at 459–60, 155 N.W.2d at 63. On the contrary, to recover under the theory of strict liability the plaintiff must still prove:

> (1) that the product was in defective condition when it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages, (4) that the seller engaged in the business of selling such product . . . , and (5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it. *Dippel*, 37 Wis.2d at 460, 155 N.W.2d at 63.

To state a cause of action under strict liability then, the plaintiff must essentially allege that the product was defective and unreasonably dangerous. In the present case, the complaint clearly alleges that the defendants respectively manufactured or sold a gasoline can which was defective and unreasonably dangerous to children such as the plaintiff. The defect complained of was the failure to design the can with a cap sufficient to prevent children from removing it.

However, while it is readily apparent that the proper elements were pleaded, the complaint cannot automatically be said to be valid. The allegations relating to the defective and unreasonably dangerous condition of the product involve conclusions of law which are not admitted as true. Thus, whether the gasoline can was defective and unreasonably dangerous was a question to be initially answered by the court. As stated above, the complaint must be liberally construed, and all reasonable inferences must be drawn from the facts in favor of the complaint. If the trial court could have concluded

as a matter of law that no jury could reasonably find that the gasoline can without a safety cap was defective or unreasonably dangerous, then the complaint failed to state a cause of action and the motion to dismiss should have been granted. On the other hand, if the trial court could not reach that conclusion, then a cause of action was stated and the motion was properly denied.

The defendants contend that the motion to dismiss should have been granted because, as a matter of law, no jury could have reasonably concluded that the gasoline can was either defective or unreasonably dangerous. In support of their argument, the defendants rely on *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.*, 69 Wis.2d 326, 230 N.W.2d 794 (1975).

In *Vincer*, a young boy was visiting his grandparents' home. While unsupervised, he fell into a swimming pool, remained there for a prolonged period of time, and sustained severe brain damage. The allegation was that a retractable ladder to the aboveground pool had been left in the down position, thereby providing easy access to the pool. The parents brought suit against the manufacturer of the swimming pool claiming that the pool was defectively designed in that it failed to provide a self-latching and closing gate to prevent entry to the pool. The Esther Williams Company demurred to the complaint for failure to state a cause of action. The trial court sustained the demurrer and the supreme court affirmed.

In its opinion, the court determined as a matter of law that the pool did not contain an unreasonably dangerous defect. The defendants believe the principles enunciated in *Vincer* mandate a similar outcome in the instant case. We disagree.

Comment *g* to sec. 402A of Restatement, 2 *Torts* 2d, states that a product is in a defective condition when "at the time it leaves the seller's hands, [it is] in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." While this comment serves as a guideline, there is no general definition for "defect," and a decision on whether a defect exists must be made on a case-by-case basis. *Jagmin v. Simonds Abrasive Co.*, 61 Wis.2d 60, 66, 211 N.W.2d 810, 813 (1973).

The *Vincer* court concluded that the swimming pool could not have been defective for failure to have the suggested gate because it had a retractable ladder which rendered the pool "as safe as it reasonably could be." *Vincer*, 69 Wis.2d at 331, 230 N.W.2d at 798. The product at issue here, a gasoline can, was not as safe as was reasonably possible since the cap was not designed in such a way as to prevent young children from removing it. Equipping the gasoline can with a child-proof cap would have rendered the can substantially safer and entailed only a nominal additional cost. The practical value of such a cap may readily be seen since gasoline cans, while not intended to be used by children unable to appreciate the attendant dangers of gasoline, are customarily stored in places accessible to children.

The second element to be considered is whether the defective product, the gasoline can, was unreasonably dangerous. Comment *i* to sec. 402A of the Restatement, in part, describes an article as unreasonably dangerous when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." In *Arbet v. Gussarson*, 66 Wis.2d 551, 225 N.W.2d 431 (1975), the distinction between dangers which are latent or hidden

and those which are obvious was explored in the context of this Restatement comment. The court observed that since an ordinary consumer would expect a Volkswagon to be less safe in an accident than a larger car, the small size would not make the Volkswagon unreasonably dangerous. *Arbet* itself dealt with a design defect in a Rambler Station Wagon which resulted in gasoline being retained in the passenger compartment. Since the danger arising from this defect was hidden rather than obvious, the supreme court reversed the trial court and upheld the complaint as against the demurrer of the car manufacturer.

*Vincer* noted that the patent-danger rule discussed in *Arbet* and stated that the Wisconsin test of whether a product contains an unreasonably dangerous defect was as follows: "If the average consumer would reasonably anticipate the dangerous condition of the product and fully appreciate the attendant risk of injury, it would not be unreasonably dangerous and defective." *Vincer*, 69 Wis.2d at 332, 230 N.W.2d at 798. The court then concluded that the swimming pool did not contain an unreasonably dangerous defect for two reasons: first, because the absence of a self-latching gate was an obvious condition and second, because the average consumer would recognize the inherent danger of a retractable ladder in the down position when unsupervised children are about.

We think a different result is warranted in the present case. While the defect in the gasoline can was not concealed, this court is unable to conclude, as a matter of law, that the absence of a child-proof cap was an obvious as opposed to a latent condition. Nor do we believe the dangers to unsupervised children from a gasoline can without a child-proof cap are so apparent that the average consumer would be completely aware of them.

In this regard the factual circumstances in this case are clearly distinguishable from those in *Vincer.* It is common knowledge that children are attracted to swimming pools and that precautions must therefore be taken. *See McWilliams v. Guzinski,* 71 Wis.2d 57, 62, 237 N.W. 2d 437, 439 (1976) (holding that an insufficiently guarded swimming pool in a residential area is an attractive nuisance to a four year old child). The danger to a young child from a swimming pool is obvious. The hazards to a child arising from a gasoline can without a child-proof cap are not so readily apparent. A child is not so clearly attracted to this product that an adult would immediately be put on guard to take precautions for the child's safety.

Based on the foregoing discussion, we conclude the complaint stated a cause of action in strict liability.

## NEGLIGENCE

In order to state a cause of action for negligence, the following elements must be pleaded: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Coffey v. City of Milwaukee,* 74 Wis.2d 526, 531, 247 N.W.2d 132, 135 (1976); *Falk v. City of Whitewater,* 65 Wis.2d 83, 85–86, 221 N.W.2d 915, 916 (1974); *Padilla v. Bydalek,* 56 Wis.2d 772, 776, 203 N.W. 2d 15, 18 (1973). As against both Huffman and Welles, the plaintiff essentially pleaded that the can had a cap insufficient to prevent young children from removing it; that the defendants knew or should have known that it would be dangerous when accessible to children; that Stephen Keller was severely injured, and that the injuries were caused by the negligence of the defendants.

Again, as in the case of strict liability, all the elements were properly pleaded. However, since the allegation of duty involves a conclusion of law, it is not admitted as true. Thus, whether a duty to Stephen Keller existed must be determined by the court as a matter of law. *Coffey v. City of Milwaukee, supra.* Unless it can be stated as a matter of law that no duty existed, the complaint was sufficient.

In *A. E. Investment Corp. v. Link Builders, Inc.*, 62 Wis.2d 479, 483, 214 N.W.2d 764, 766 (1974), the supreme court defined a person's duty as "the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act." It also went on to say that "[a] defendant's duty is established when it can be said that it was foreseeable that his act or *omission to act* may cause harm to someone." [Emphasis supplied.] *Id.* at 484, 214 N.W.2d at 766; *DeBauche v. Knott,* 69 Wis.2d 119, 123–24, 230 N.W.2d 158, 161 (1975). It is clear that the concept of duty as an element of negligence is inexorably interwoven with foreseeability. *Coffey,* 74 Wis.2d at 537, 247 N.W.2d at 138. Thus, whether the defendants owed a duty to Stephen Keller will depend on whether it was foreseeable that failing to provide a child-proof cap for the gasoline can would cause harm to someone. We believe it was.

Children are incurably curious about their environment. They learn by interacting with it and by imitating the behavior of people around them. A gasoline can, found primarily in garages, is commonly stored either on the floor or on a low shelf. These are areas readily accessible to children in their "explorations." It is not unforeseeable that a child might attempt to taste the li-

quid in the can. Nor is it unforeseeable that in the course of playing "mow the lawn" or "gas station," a child might pour the gasoline from the can. Because children are fascinated with fire, the danger arising from such an action is certainly foreseeable. We conclude that because *some* harm was foreseeable, the defendants owed a duty to the plaintiff and the complaint therefore stated a cause of action for negligence.

Defendants also ask this court, in effect, to cut off liability on public policy grounds. On occasion the supreme court has seen fit to decide the public policy issue on demurrer. *See, e.g., Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 236 N.W.2d 1 (1975); *Rieck v. Medical Protective Co.,* 64 Wis.2d 514, 219 N.W.2d 242 (1974). However, it has also stated that "it is usually better practice to submit the issue to the jury insofar as determining the issues of negligence and causation in the same manner as in the ordinary case." *Padilla,* 56 Wis.2d at 779, 203 N.W.2d at 20. Since the present case involves the complex issues of products liability, we believe the policy considerations should await the outcome of a full trial.

*By the Court.*—Order affirmed.