Deanna ROGERS, Plaintiff-Appellant,

v.

AAA WIRE PRODUCTS, INC., JEB Sales Company, Inc., a
foreign corporation, Defendants-Respondents,

Oswald JAEGER BAKING COMPANY, a foreign corpora-
tion, individually and d/b/a Jaeger Bakery, Heileman
Baking Co., a domestic corporation, n/k/a G. Heileman
Brewing Company, a domestic corporation, individu-
ally and d/b/a Jaeger Bakery, Liberty Mutual
Insurance Company, a foreign corporation, DEF
Insurance Company and United States Fidelity &
Guaranty Company, a foreign corporation,
Defendants.

Court of Appeals

*No. 92–0017. Submitted on briefs November 4, 1992.—Decided
February 8, 1994.*

(Also reported in 513 N.W.2d 643.)

For the plaintiff-appellant the cause was submitted on the briefs of *Elizabeth B. Bartnik* of *Eisenberg, Weigel, Carlson, Blau, Reitz & Clemens, S.C.*, of Milwaukee.

For the defendants-respondents, AAA Wire Products, Inc., JEB Sales Company, Inc., and United States Fidelity and Guaranty Company, the cause was submitted on the briefs of *Patrick F. Koenen* of *Hinshaw & Culbertson*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Deanna Rogers appeals from a summary judgment granted to AAA Wire Products, Inc., and JEB Sales Company, Inc., dismissing her products liability and negligence complaint. In this case we decide whether to extend the application of *Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 342 N.W.2d 37, *cert. denied*, 469 U.S. 826 (1984), which allowed a DES[1] plaintiff to avoid summary judgment despite an inabil-

---

[1] Diethylstilbestrol, a synthetic estrogenic hormone, was produced and marketed from the 1940's to 1971 for several purposes, including the prevention of miscarriages in problem pregnancies. When medical research established a possible link between fetal exposure to DES caused by the mother's ingestion of the drug during pregnancy and the development many years later of the child's vaginal cancer, DES was banned and countless individual and class action suits followed. *Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 177-181, 342 N.W.2d 37, 43-45, *cert. denied*, 469 U.S. 826 (1984).

ity to prove causation by a specific drug producer or marketer, to this case where a non-DES plaintiff cannot identify which company marketed or distributed the product that allegedly injured her. We decline to extend *Collins* and we affirm.

According to her amended complaint, on January 3, 1987, while working at Sav-U Warehouse Foods, Rogers was injured as she was pulling a wire bread cart that collapsed. Rogers alleged that the cart was defective and/or defectively designed, causing it to be unstable and dangerous. She alleged that AAA manufactured the cart, JEB distributed the cart, and Oswald Jaeger Baking Company[2] used the cart to distribute its bakery products to the Sav-U store where she worked. Significantly, however, after the accident, the cart was neither identified nor retained by either Rogers or any of the defendants.

Rogers sued AAA and JEB for strict products liability and negligence. The defendants answered, denying liability. The defendants subsequently moved for summary judgment.

In support of their summary judgment motion, AAA and JEB submitted the responses to their discovery requests in which Rogers stated that she was

---

[2] In addition to AAA and JEB, Rogers filed suit against "Oswald Jaeger Baking Company, a foreign corporation, individually and d/b/a Jaeger Bakery, Heileman Baking Co., a domestic corporation, n/k/a G. Heileman Brewing Company, a domestic corporation, individually and d/b/a Jaeger Bakery," as well as their insurers. Rogers' action against the Jaeger/Heileman defendants was stayed as a result of a January 24, 1991, order from the United States Bankruptcy Court enjoining further action against these defendants due to Heileman's Chapter 11 filing. The Jaeger/Heileman defendants are not parties to this appeal.

unable to produce the bread cart that she alleged caused her injuries and that she had no knowledge of the cart's whereabouts since the date of her accident. Additionally, in her deposition Rogers stated that she could not recall any "signs, tags, writing" or other identifying markings on any of the carts used at the Sav-U store where she worked.

AAA and JEB also submitted the affidavit of Robert Ayers, the Sav-U manager, who stated that no effort had been made to retain the cart, that the present location of the cart was unknown, and that he had no knowledge of who manufactured, distributed or owned the cart involved in Rogers' accident. Ayers stated that "there were at least 4 bread carts provided by Jaeger Bakery" that were kept on the premises and, further, that other vendors also kept carts at the store. He stated that once they were in the store, the carts were not separated by manufacturer, distributor, or owner. He was not aware of any markings on the carts that would have indicated vendor ownership; he did not know who manufactured the carts; and all the bread carts at the store looked identical to a cart that Rogers' engineer had selected and photographed from among the carts at the store approximately sixteen months after Rogers' accident.

Finally, AAA and JEB submitted the affidavit of William Herlocker, the vice-president of JEB. Herlocker stated that there were "at least four other companies" who manufactured and sold carts nationwide of substantially the same design and appearance as AAA carts.

Rogers submitted the affidavit of Francis Biehl, a professional engineer. Biehl stated that approximately sixteen months after Rogers' accident he conducted tests "on *a* bread cart which contained imprints bear-

ing the names AAA Wire products, JEB Sales and Jaeger Baking after an investigation revealed Jaeger Baking supplied Sav-U brand bread to Sav-U-Foods." (Emphasis added.) Biehl concluded that design and maintenance flaws rendered the cart he tested "unstable" and "unreasonably dangerous."

Rogers also submitted her deposition testimony which stated that only Sav-U bread was stored on carts in the back of the store where she had been working and that she did not recall whether any other bread manufacturers left carts at the store.

Granting summary judgment, the trial court concluded that Rogers had failed to establish that AAA and JEB had manufactured and distributed the cart and, additionally, that the cart was in the same condition at the time of the accident as when it was manufactured and distributed. Because we conclude that the summary judgment submissions failed to establish sufficient evidence for Rogers to show that AAA and JEB manufactured and distributed the cart, and because, without that, Rogers cannot prove causation by a specific manufacturer or distributor, we affirm.

Summary judgment is appropriate to determine whether there are any disputed factual issues for trial and "to avoid trials where there is nothing to try." *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis. 2d 460, 470, 304 N.W.2d 752, 757 (1981). We use the same methodology as the trial courts in determining whether summary judgment should be granted or denied. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). First, we examine the pleadings to determine whether they state a claim for relief. *Id.* If a claim is stated and the respon-

sive pleadings join the issue, we then examine the evidentiary record to determine whether a genuine issue of material fact exists and whether a party is entitled to a judgment "as a matter of law." *See* § 802.08(2), STATS.

■

Although the party seeking summary judgment must " 'establish a record sufficient to demonstrate . . . that there is no triable issue of material fact on any issue presented[,]' [t]he ultimate burden . . . of demonstrating that there is sufficient evidence . . . to go to trial at all . . . is on the party that has the burden of proof on the issue that is the object of the motion." *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290-291, 507 N.W.2d 136, 139 (Ct. App. 1993) (citations omitted). Once the party moving for summary judgment

> demonstrates that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," the opposing party may avoid summary judgment only by "set[ting] forth specific facts showing that there is a genuine issue for trial."

*Id.* at 291, 507 N.W.2d at 139 (citations omitted; brackets in original); RULE 802.08(3), STATS. Further, "once sufficient time for discovery has passed, it is the burden of the party asserting a claim on which it bears the burden of proof at trial to make a showing sufficient to establish the existence of an element essential to that party's case.' " *Id.* at 292, 507 N.W.2d at 140 (citations omitted).

In a tort action, a plaintiff bears the burden of proving causation between a defendant's conduct and the plaintiff's injury. *See Collins*, 116 Wis. 2d at 181-182, 342 N.W.2d at 45. Additionally, in a products liability case, in order to recover damages a plaintiff must prove that:

> "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> (a) the seller is engaged in the business of selling such a product, and
> (b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

*Dippel v. Sciano*, 37 Wis. 2d 443, 459, 155 N.W.2d 55, 63 (1967) (quoting RESTATEMENT (SECOND) OF TORTS § 402A (1977) ).

Rogers failed to make a sufficient evidentiary showing in her submissions opposing summary judgment to create a genuine material issue regarding causation by AAA and JEB. Based on all the submissions, including Herlocker's affidavit stating that "at least four other companies" sold similar carts, the trial court could only conclude that the defendants were merely two among many possible sources of the cart. Thus, Rogers offered insufficient evidence that AAA manufactured and JEB distributed the cart that allegedly injured her.

Rogers contends that we should apply the *Collins* rationale to relieve her of her burden of production to offer evidence establishing a genuine material issue

regarding the causal connection between her injuries and the specific manufacturer and distributor of the cart.[3] In *Collins*, the plaintiff was unable to identify the specific drug company that manufactured or distributed the DES ingested by her mother because of: 1) the generic form of some DES; 2) the approximately 300 manufacturers and producers; 3) the lack of records; and 4) the many years between her mother's ingestion of DES and the realization of an injury. *Id.* at 177, 342 N.W.2d at 42-43. The supreme court acknowledged the improvident public policy implications that would flow from a requirement that DES plaintiffs identify the specific DES source:

> It is probable, given the sheer number of potential victims, that many more suits will arise. Thus, it is

---

[3] In addition to her argument that we should extend *Collins*, Rogers argues, citing *Powers v. Hunt-Wesson Foods, Inc.*, 64 Wis. 2d 532, 219 N.W.2d 393 (1974), that "[p]laintiffs in other products liability cases have been allowed to proceed when the item which produced the injury had been destroyed." In *Powers*, the plaintiff injured his hand when the bottom of a glass ketchup bottle broke. The plaintiff could not produce the bottle at trial because it fell to the floor and broke into pieces, which were thrown out. *Id.* at 535, 219 N.W.2d at 394-395. *Powers* does not support Rogers' argument, however, because *Powers* did not deal with the issue of identification of the bottle's manufacturer or distributor.

Rogers also argues that she "told her manager of the situation and it would only make sense that [he] be the one to segregate the cart.. . . [T]he powers that be never did do anything to try and segregate the metal wire bread cart nor did they do anything to try and identify the cart." Rogers does not argue, however, that the manager or any defendant had a duty to do so, or acted unlawfully to prevent such segregation or conceal identification.

> quite clear that in this case we are not dealing with an isolated, unique set of circumstances which will never occur again. We are faced with a choice of either fashioning a method of recovery for the DES case which will deviate from traditional notions of tort law, or permitting possibly negligent defendants to escape liability to an innocent, injured plaintiff. In the interests of justice and fundamental fairness, we choose to follow the former alternative.

*Id.* at 181, 342 N.W.2d at 45. Recognizing the "insurmountable obstacle" faced by DES plaintiffs in proving that a particular drug company produced or marketed the specific DES taken by the plaintiffs' mothers, *see id.* at 182, 342 N.W.2d at 45, the supreme court relaxed the plaintiff's burden of proof, concluding that for causal identification, DES plaintiffs need only prove "by a preponderance of the evidence that an allegedly negligent defendant drug company produced or marketed the type of DES taken by the plaintiff's mother" for a negligence claim, and "by a preponderance of the evidence that a defendant drug company produced or marketed the allegedly defective and unreasonably dangerous type of DES taken by the plaintiff's mother" for a strict products liability claim. *Id.* at 195-196, 342 N.W.2d at 51. Rogers argues, therefore, that she must establish only that AAA and JEB "produced or marketed the type" of cart that injured her.

■ We decline to extend *Collins* to this case. Although *Collins* noted that its "method of recovery could apply in situations which are factually similar to the DES cases," *id.* at 191, 342 N.W.2d at 49, this case is factually dissimilar. Nothing in the facts of this case came close to confronting Rogers with an "insurmountable obstacle" in identifying the source of the cart. That she

apparently was unable to do so does not raise any of the public policy considerations for which the supreme court relaxed the causal identification requirement in *Collins*. Further, in contrast to *Collins*, the facts of this case indeed did present "an isolated, unique set of circumstances," *id.* at 181, 342 N.W.2d at 45, with no probability that more suits will arise from others who fail to retain or identify the bread carts that allegedly caused their injuries. Thus, the extension of *Collins* that Rogers suggests would be a drastic and unwarranted departure from its theme.

The trial court correctly granted summary judgment to the defendants and, therefore, we affirm.

*By the Court.*—Judgment affirmed.