Kara HORST and Jonathan Horst,
by his Guardian ad Litem,
Plaintiffs-Appellants-Petitioners,

v.

DEERE & COMPANY, a Delaware Corporation,
Defendant-Respondent.

Supreme Court

*No. 2006AP2933. Oral argument February 3, 2009.
—Decided July 14, 2009.*

2009 WI 75

(Also reported in 769 N.W.2d 536.)

For the plaintiff-appellant-petitioners there were briefs filed by *John C. Cabaniss* and *Cabaniss Law,* Mequon, and oral argument by *John C. Cabaniss.*

For the defendant-respondent there was a brief by *Michael L. Zaleski* and *Quarles & Brady LLP,* Madison; *Lars E. Gulbrandsen* and *Quarles & Brady LLP,* Mil-

waukee; and *James Brogan, Nancy Rappaport,* and *DLA Piper US LLP,* Philadelphia, Pa., and oral argument by *Michael L. Zaleski.*

An amicus curiae brief was filed by *William C. Gleisner, III* and the *Law Offices William C. Gleisner,* Milwaukee, on behalf of the Wisconsin Association for Justice.

An amicus curiae brief was filed by *Colleen D. Ball,* Wauwatosa; *Stephanie A. Scharf, Deborah H. Bornstein,* and *Schoeman, Updike, Kaufman & Scharf,* Chicago, Ill.; and *Hugh F. Young, Jr.,* Reston, Va., on behalf of the Product Liability Advisory Council, Inc.

¶ 1. MICHAEL J. GABLEMAN, J. This is a review of a published decision of the court of appeals affirming the judgment of the Washington County Circuit Court, Annette K. Ziegler, Judge.[1] After a jury trial, the circuit court rejected plaintiffs' negligence and strict products liability personal injury claims. Plaintiffs moved for a new trial, challenging the accuracy of the jury instructions on the strict products liability claim. The circuit court concluded that the jury was properly instructed and denied the motion for a new trial. The court of appeals affirmed.

¶ 2. The jury instructions were based on Wisconsin Jury Instruction—Civil 3260 with a supplemental statement regarding bystander claims. The jury was informed that a bystander personal injury claim in strict products liability is only available if the product is unreasonably dangerous based on the expectations of an ordinary user or consumer (the "consumer contemplation test"). Plaintiffs claim that this jury instruction was an incorrect statement of the law. They contend

[1] *Horst v. Deere & Co.,* 2008 WI App 65, 312 Wis. 2d 421, 752 N.W.2d 406.

150

that when a product is dangerous only to a bystander and not to a user or consumer, the consumer contemplation test is inappropriate. Rather, the jury should be instructed that a product is unreasonably dangerous based on the contemplation and expectations of an ordinary bystander. They call this a "bystander contemplation test," and assert that this is and should be the law in Wisconsin.

¶ 3. Thus, the main question before us is whether Wisconsin has adopted or should adopt a "bystander contemplation test." If the bystander contemplation test is the law, we must determine whether the circuit court's jury instructions were a misstatement of the law, and if so, whether the error was prejudicial.

¶ 4. We hold that the consumer contemplation test, and not a bystander contemplation test, governs all strict products liability claims in Wisconsin, including cases where a bystander is injured. While bystanders may recover when injured by an unreasonably dangerous product, the determination of whether the product is unreasonably dangerous is based on the expectations of the ordinary consumer.[2] Therefore, the jury was properly instructed, and the decision of the court of appeals is affirmed.

## I. BACKGROUND

¶ 5. The facts of this case are horrific. On the afternoon of May 2, 2004, the Horst family returned

---

[2] The dissent confuses and muddles the issue and our holding in this case. It begins: "I agree with the majority that bystanders can recover in strict liability for a product that is unreasonably dangerous to bystanders . . . ." Our holding is more precise. The issue is not who is the product unreasonably dangerous to, but whether the product is unreasonably dangerous. This distinction is subtle, but important.

home from an overnight trip to Wisconsin Dells. Two-year-old Jonathan and his older brother went to play outside in the yard. Jonathan's mother, Kara, was planning to watch Jonathan as she hung laundry on an outdoor clothesline, but stopped to use the restroom first. Before Kara arrived outside, Jonathan's father Michael decided to mow the lawn using their John Deere LT160 riding lawn mower. As Michael began to cut the lawn, he decided to mow in reverse along the rear of the house, looking over his right shoulder. Jonathan, however, had moved behind the lawn mower to Michael's left, out of Michael's line of sight. As Michael proceeded backwards, he saw Jonathan's shoe come out the other side. Michael screamed, realizing that he had severed both of Jonathan's feet. Kara called 911, and Jonathan was flown to Children's Hospital. There he received multiple surgeries, and now wears prosthetics on both legs.

¶ 6. The John Deere LT160 mower Michael was using came equipped with a no-mow-in-reverse safety feature that stops both the engine and mower blades when an operator begins to travel in reverse while the mower blades are engaged. However, the lawn mower also had what amounts to an override feature, the Reverse Implement Option ("RIO"), which allows an operator to mow in reverse with the mower blades in operation.

¶ 7. To implement the RIO feature, an operator must depress the brake pedal and press the RIO switch. Once engaged, the RIO system allows an operator to mow in reverse without stalling either the engine or the mowing device. When reverse mowing is complete, the operator can continue to mow forward without shutting off the mowing device. When the operator begins mowing forward again, the lawn mower returns to its

default position, which requires the operator to manually engage the RIO device again to mow in reverse.

¶ 8. Michael Horst engaged the RIO device twice before the accident in this case. He first engaged the RIO to mow toward the Horst home along his gravel driveway. He then moved forward along the back of the house. He engaged the RIO device again to mow in reverse along the back of the house. That is when Jonathan was injured.

¶ 9. The LT160 lawn mower operator's manual contained numerous warnings relating to mowing in reverse and mowing in the presence of children or bystanders. The warnings included the following:

- Before backing up, stop mower blades or attachments and look down and behind the machine carefully, especially for children.

- CAUTION: Avoid injury! Children or bystanders may be injured by runover [sic] and rotating blades. Before backing up, carefully check the area around the machine.

- NOTE: Backing up while the mower is engaged is strongly discouraged.

- The Reverse Implement Option should be used only when operating another implement (attachment) or when the operator deems it necessary to reposition the machine with the mower engaged.

The parties agree that Michael read but disregarded these warnings, choosing to mow in reverse in the presence of his young children.

¶ 10. Following the accident, the Horsts filed a lawsuit against Deere & Company ("Deere") in Washington County Circuit Court, bringing negligence and strict products liability claims. On the strict products

liability claim, the Horsts argued that designing a mower to operate in reverse is unreasonably dangerous and that the mower should have had an alternative design. The Horsts asserted that the lawn mower should not have been equipped with the RIO, thus preventing an operator from ever mowing in reverse. The Horsts also sought punitive damages, alleging that the design demonstrated a deliberate disregard for safety.

¶ 11. Deere moved for summary judgment on the grounds that the "consumer contemplation test" barred Jonathan's strict products liability claim. The circuit court denied the motion for summary judgment. It concluded that while bystanders injured by unreasonably dangerous products may recover under *Howes v. Hansen*, 56 Wis. 2d 247, 201 N.W.2d 825 (1972) (hereafter "*Howes I*"), the question of whether the product was unreasonably dangerous and whether punitive damages should be awarded were issues of fact for the jury.

¶ 12. At trial, the Horsts requested that Wisconsin Jury Instruction—Civil 3260, which does not mention bystanders, be supplemented to reflect the availability of recovery for bystanders. They specifically proposed that the instruction include the phrase "or bystander" following most occurrences of "user" and "consumer" in the standard instruction. The circuit court denied the Horsts' proposed instructions, choosing to give the standard instructions supplemented with the following statement: "The law in Wisconsin imposes a duty on a manufacturer to a bystander, if the bystander is injured by a defective product, which is unreasonably dangerous to the ordinary user or consumer."

¶ 13. The Horsts also requested a special verdict question asking the jury: "Do you find from the evidence that the subject lawn tractor, when it left the hands of Defendant, Deere & Company, was in a defective condition so as to be unreasonably dangerous to a prospective user/consumer or bystander?" The circuit court denied this request and submitted the question to the jury without the "or bystander" language.[3]

---

[3] The trial court's instruction to the jury was substantially identical to Wis JI—Civil 3260. The instruction, as given, is here reproduced in its entirety:

A manufacturer of a product who places on the market a defective product which is unreasonably dangerous to the ordinary user or consumer and which is expected and does reach the consumer without substantial change in the condition in which it is sold, is regarded by law as responsible for harm caused by the product even though he or she has exercised all possible care in preparation and sale of the product, provided the product was being used for the purpose for which it was designed and intended to be used.

There is no claim in this case that the subject lawn tractor failed to perform its intended purpose of mowing the lawn. You may find the subject lawn tractor was dangerous beyond the reasonable contemplation by an ordinary user or consumer even if it served its intended purpose.

A product is said to be defective when it is in a condition not contemplated by the ordinary user or consumer, which is unusually dangerous to the ordinary user or consumer and the defect arose out of design, manufacture or inspection while the article was in the control of the manufacturer.

A defective product is unreasonably dangerous to the ordinary user or consumer when it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer possessing the knowledge of the products' characteristics which were common to the community. A product is not defective if it is safe for normal use.

A manufacturer is not under a duty to manufacture a product which is absolutely free from all possible harm to every individual. It is the duty of the manufacturer not to place upon the market a defective product, which is unreasonably dangerous to the ordinary consumer.

¶ 14. The jury ultimately found both Michael and Kara Horst, but not Deere, negligent in the injury to their son, Jonathan. The jury also found that the lawn mower in question was not in a defective condition so as to be unreasonably dangerous to a prospective user or consumer. Accordingly, Deere was not strictly liable for Jonathan's injuries.

¶ 15. After the jury verdict, the Horsts moved for a new trial on the grounds that the jury was improperly instructed. The circuit court concluded that the instruction was in accord with the facts and existing case law, and thus was not prejudicial. The circuit court therefore denied the motion for a new trial and dismissed the Horsts' claims with prejudice.

¶ 16. The Horsts filed a notice of appeal with the court of appeals, and also filed a petition to bypass with this court, which was denied. On its review, the court of appeals agreed with the circuit court, concluding that the consumer contemplation test is the proper test for unreasonably dangerous products, and that the jury instructions constituted an accurate statement of the

---

The law in Wisconsin imposes a duty on a manufacturer to a bystander if the bystander is injured by a defective product which is unreasonably dangerous to the ordinary user or consumer.

Question 1 in the verdict form asks, when the subject lawn mower left the possession of—Question Number 1 asks, do you find from the evidence that the subject lawn mower, when it left the hands of Defendant Deere and Company, was in a defective condition so as to be unreasonably dangerous to a prospective user/consumer?

Before you can answer Question 1 yes, you must be satisfied that; one, the product was in a defective condition. Two, the defective condition made the product unreasonably dangerous to people. Three, the defective condition of the product existed when the product was under the control of the manufacturer. And four, the product reached the consumer without substantial change in the condition in which it was sold.

law. *Horst v. Deere & Co.*, 2008 WI App 65, ¶ 20, 312 Wis. 2d 421, 752 N.W.2d 406. The Horsts then petitioned this court for review.

## II. STANDARD OF REVIEW

■■

¶ 17. This case asks us to evaluate the sufficiency of the circuit court's jury instructions. Generally, "a trial court has broad discretion when instructing a jury." *White v. Leeder,* 149 Wis. 2d 948, 954, 440 N.W.2d 557 (1989). If the jury instructions fully and fairly explain the relevant law, there are no grounds for reversal. *Green v. Smith & Nephew AHP, Inc.,* 2001 WI 109, ¶ 25, 245 Wis. 2d 772, 629 N.W.2d 727. The question of whether the jury instructions accurately state the law is a question of law, which we review de novo. *Id.*

■

¶ 18. If the jury instructions were an erroneous statement of the law, a new trial will be ordered only if the court's error "affected the substantial rights of the party." Wis. Stat. § 805.18(2) (2007–08). An error affects the substantial rights of the party if it undermines confidence in the outcome. *State v. Dyess,* 124 Wis. 2d 525, 544–45, 370 N.W.2d 222 (1985). An error undermines confidence in the outcome if there is a reasonable probability[4] the outcome would have been different but for the error. *Id.* at 544.

---

[4] Some of our prior decisions have used the term "possibility" instead of "probability." We believe "probability" is a better statement of the test. *See Green v. Smith & Nephew AHP, Inc.,* 2001 WI 109, ¶¶ 114–19, 245 Wis. 2d 772, 629 N.W.2d 727 (Crooks, J., concurring).

157

### III. DISCUSSION

¶ 19. This case is a dispute over both what the law is—that is, what Wisconsin courts have said—and over what the law should be. The parties here dispute the meaning and relevance of several cases, and underlying this, disagree about the proper scope of strict products liability law in Wisconsin.

¶ 20. To address these questions, we first, in subsection A (¶¶ 21–31), briefly introduce the development of and theory behind strict products liability and the consumer contemplation test. In subsection B (¶¶ 32–35), we explain the proposed bystander contemplation test as proffered by the Horsts. In subsection C (¶¶ 36–67), we review the significant cases relied on by the parties. Finally, in subsection D (¶¶ 68–81), we analyze and answer the ultimate question before us— whether the consumer contemplation test is the proper standard for determining whether a product is unreasonably dangerous when a bystander is injured.

### A. Strict Products Liability and The Consumer Contemplation Test

¶ 21. Historically, with the exception of the sale of food, a supplier of a product was generally not liable for injuries caused by that product without a showing of negligence or privity of contract. *See* Restatement (Second) of Torts § 402A (hereafter "§ 402A") cmt. b (1965).[5] This began to change in the 1950s and 1960s as courts developed theories of liability, often based on warranty-like concepts, to hold manufacturers or sellers liable for

---

[5] Section 402A provides as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

injuries even without negligence or privity of contract. *See id.* (describing some of the early decisions as displaying "considerable ingenuity in evolving more or less fictitious theories of liability to fit the case"). There was, in short, a growing recognition that consumers needed protection from defective products that caused harm to consumers or their property. *See id.*

¶ 22. In the early 1960s, during this same time, the American Law Institute was drafting what became the Restatement (Second) of Torts. The Restatement (Second) attempted to capture this emerging line of cases by creating a new category of tort claims—strict products liability—which it set forth in the newly created § 402A. Although strict products liability was still in its intellectual infancy, § 402A was remarkably influential in speeding the adoption of this emerging area of law in courts around the country. *See* Douglas A. Kysar, *The Expectations of Consumers,* 103 Colum. L. Rev. 1700, 1711 (2003); George W. Conk, *Punctuated Equilibrium: Why Section 402A Flourished and the Third Restatement Languished,* 26 Rev. Litig. 799, 808–09 (2007). We joined this trend and adopted § 402A in 1967 in *Dippel v. Sciano,* 37 Wis. 2d 443, 155 N.W.2d 55 (1967).[6]

---

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

[6] *Dippel v. Sciano* announced a five-part test to prove strict liability under § 402A:

¶ 23. This strict products liability structure, whereby a manufacturer bears the costs for injuries resulting from product use, even when the manufacturer was not negligent, arose for at least three important policy reasons.

¶ 24. First, strict products liability serves as a cost shifter. *See* § 402A cmt. c. It takes the usually overwhelming cost of injury off of the injured person and places it on the manufacturer. The manufacturer generally passes the costs for injuries and preventative safety measures on to all consumers through higher product prices. This liability system, then, spreads the cost of the injury risk to all consumers. *Id.* The justification relied upon by courts is that companies have the capacity to bear the costs and the ability to assume them more efficiently than individuals.

¶ 25. A second rationale underpinning strict products liability is fundamental fairness to the injured person. *Id.* If manufacturers can reasonably design a safer product or a product that better accords with the safety expectations of consumers but choose not to do so, they should be held liable for the resultant injuries.

(1) that the product was in defective condition when it left the possession or control of the seller,

(2) that it was unreasonably dangerous to the user or consumer,

(3) that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages,

(4) that the seller engaged in the business of selling such product or, put negatively, that this is not an isolated or infrequent transaction not related to the principal business of the seller, and

(5) that the product was one which the seller expected to and did reach the user or consumer without substantial change in the condition it was when he sold it. 37 Wis. 2d 443, 460, 155 N.W.2d 55 (1967).

¶ 26. Finally, a third reason for strict products liability is that it provides a strong incentive for deterrence. Restatement (Third) of Torts: Products Liability (hereafter "Restatement (Third)") § 2 cmt. a (1998). When a manufacturer can reasonably prevent an injury, strict products liability gives them a strong incentive to do so. This litigation threat promotes manufacturer investment in safer designs, quality control, and the furnishing of adequate warnings to the purchasers and users of products. *Id.*; § 402A cmt. j.

¶ 27. Strict products liability is not, however, absolute liability. *Howes I,* 56 Wis. 2d at 253. We do not want to hold businesses liable for every injury involving their products. Such an approach would eliminate some useful products from the market that cannot possibly be made completely safe (such as knives, guns, medicine, and even sugar in the case of a diabetic). § 402A cmts. i, k. Hence, all of the strict products liability analytical frameworks—including a risk-utility analysis[7] and our own focus on consumer expectations—have at least a partial grounding in the necessity of guarding against absolute liability.

¶ 28. Section 402A describes what has been called the "consumer contemplation test" for determining whether a product is unreasonably dangerous. Comment g explains that a manufacturer is strictly liable "only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to

---

[7] A risk-utility analysis requires a balancing of the risks and benefits of a product design "in light of the knowledge of risks and risk-avoidance techniques reasonably attainable at the time of distribution." Restatement (Third) of Torts: Products Liability § 2 cmt. a (1998).

him." § 402A cmt. g. Similarly, comment i states that the product "must be dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* cmt. i. This standard requires manufacturers to anticipate what consumers will expect, and to take safety precautions in accordance with those expectations. Those safety precautions might include giving adequate instructions and warnings (*see id.* cmts. h and j) and/or implementing reasonably available safety features.

¶ 29. One of the implications of the consumer contemplation test is that consumers can and do contemplate open and obvious dangers, and are not protected when injured by such dangers. *See id.* cmt. j (warnings are not required "when the danger, or potentiality of danger, is generally known and recognized"); *Tanner v. Shoupe,* 228 Wis. 2d 357, 367, 596 N.W.2d 805 (Ct. App. 1999) ("In order for a defective design to render a product unreasonably dangerous, the defect must be hidden from the ordinary consumer, that is, not an open and obvious defect."). Consumers are also not protected if they proceed in the face of a known, though not open and obvious, danger. *See* § 402A cmt. n ("If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."). Thus a manufacturer may be able to avoid liability under § 402A by making consumers aware of dangers through warnings or simply by virtue of selling a product with open and obvious dangers.

¶ 30. Section 402A is explicitly neutral as to whether persons other than users or consumers should be able to recover under strict products liability. *Id.* Caveat (1). Comment o explains:

162

> Thus far the courts . . . have not gone beyond allowing recovery to users and consumers . . . . Casual bystanders, and others who may come in contact with the product, as in the case of employees of the retailer, or a passer-by injured by an exploding bottle, or a pedestrian hit by an automobile, have been denied recovery. There may be no essential reason why such plaintiffs should not be brought within the scope of the protection afforded, other than that they do not have the same reasons for expecting such protection as the consumer who buys a marketed product.

In relatively short order, however, courts around the country did extend protection to injured bystanders. *See* Peter Zablotsky, *Eliminating Proximate Cause As An Element of the Prima Facie Case For Strict Products Liability,* 45 Cath. U. L. Rev. 31, n.79 (1995). This court extended such protection in *Howes I,* which is discussed below.

¶ 31. No one in the case at bar disputes that bystanders may recover if a product is unreasonably dangerous. The issue in this case is the proper legal standard for determining whether a product is unreasonably dangerous when a bystander is injured.

B. The Proposed Bystander Expectations Test

¶ 32. The Horsts argue that the jury instructions in this case, which asked whether the lawn mower was unreasonably dangerous based on the expectations of the ordinary user or consumer, were incorrect as a matter of law. They maintain that the law in Wisconsin is, or should be, what they call a "bystander contemplation test."

¶ 33. The bystander contemplation test asks exactly the same question as the consumer contemplation test, but replaces the expectations of the user or con-

sumer with the expectations of an ordinary bystander. Accordingly, the Horsts assert that "when a bystander is injured by a product, the question is whether the product was as reasonably safe as an ordinary bystander would contemplate or expect, not whether the user or consumer understood and appreciated the risk." Like the consumer contemplation test, the bystander contemplation test is an objective test and not dependent on an injured party's knowledge.

¶ 34. The bystander contemplation test, according to the Horsts, applies when a bystander is injured and "where a manufacturer designs and sells a product that poses a unique risk of bodily harm to bystanders alone." They submit that the consumer contemplation test is still proper when a bystander is injured and when the danger is present for both the user or consumer and the bystander.

¶ 35. The Horsts further contend that the bystander contemplation test is not only the law, but that it is necessary to provide meaningful protection to bystanders. They argue that bystanders need greater protections than users and consumers because they have less information about the product, and less access to warnings and instructions. They also point to the language in *Howes I* (which extended protection to bystanders injured by unreasonably dangerous products), stating that "[t]here is no essential difference between the injured user or consumer and the injured bystander." 56 Wis. 2d at 255.

C. Prior Wisconsin Case Law

¶ 36. The Horsts argue that the bystander contemplation test is the law in Wisconsin even though it has not been formally announced in any of the cases as such. They point in particular to *Howes I, Howes v.*

*Deere,* 71 Wis. 2d 268, 238 N.W.2d 76 (1976) (hereafter *"Howes II"*), and *Komanekin v. Inland Truck Parts,* 819 F. Supp. 802 (E.D. Wis. 1993), asserting these cases show that when a bystander is injured, and when the threat of danger is to the bystander alone, the determination of the unreasonableness of the danger is based on an ordinary bystander's expectations, not a user or consumer's expectations.[8]

¶ 37. Deere, on the other hand, points to the standard jury instructions as well as our prior decisions in *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.,* 69 Wis. 2d 326, 230 N.W.2d 794 (1975) and *Green* to argue that, while bystanders may recover if injured by an unreasonably dangerous product, the consumer contemplation test applies in all strict products liability cases.[9]

---

[8] The Horsts also suggest that our decision in *Sumnicht v. Toyota Motor Sales,* 121 Wis. 2d 338, 360 N.W.2d 2 (1984) is relevant. *Sumnicht* concerned a passenger in a car seat who was injured in an accident, and claimed the car seat was defectively designed and unreasonably dangerous. The Horsts point to the language used in the special verdict question in *Sumnicht* asking whether the defect in the seat system design was "unreasonably dangerous to a prospective passenger in the rear seat of the automobile." *Id.* at 370. However, the court actually affirmed that Wisconsin follows the consumer contemplation test, quoting comment i from § 402A. The court correctly noted that an unreasonably dangerous product "must contain a dangerous defect whose presence an ordinary consumer would not reasonably expect." *Id.* at 369 (quoting *Arbet v. Gussarson,* 66 Wis. 2d 551, 557, 225 N.W.2d 431 (1975)). The Horsts also ignore that § 402A explicitly includes automobile passengers within the definition of a "user": " 'User' includes those who are passively enjoying the benefit of the product, as in the case of passengers in automobiles." § 402A cmt. l.

[9] Deere also cites several other Wisconsin and non-Wisconsin cases to bolster its case that we will not discuss here

¶ 38. Therefore, we will briefly discuss the principal cases cited by the parties and the arguments offered for each.

### 1. *Howes I*[10]

¶ 39. Two-year-old Richard Howes II[11] ("Richard") lived with his parents in Lake Geneva, Wisconsin in a two-family dwelling owned by neighbor Naomi Schatzman. *Howes I,* 56 Wis. 2d at 250. Ms. Schatzman delegated lawn care for the dwelling to her adult son, who in turn hired a twelve-year-old boy to mow the lawn. *Id.* One day, while the twelve-year-old boy was mowing with a Deere riding lawn mower, Richard came into contact with the mower blades and suffered serious injuries, including the loss of his right foot. *Id.* The Howes sued Deere (among others) for the child's injuries, one claim of which sounded in strict products liability. *Id.* Because the child was an injured bystander (i.e., not a user or consumer), the main issue in the case was whether an injured bystander can maintain a strict products liability claim against a manufacturer, or

---

in detail. Of note, in *Adamany v. Cub Cadet Corp.,* 04–C–224–C, 2005 U.S. Dist. LEXIS 9612 (W.D. Wis. May 16, 2005), the Western District of Wisconsin applied the consumer contemplation test, and not a bystander contemplation test, to a strict liability claim arising from an injury to a five-year-old child bystander. Deere also cites *Anderson v. Alfa-Laval Agri, Inc.,* 209 Wis. 2d 337, 564 N.W.2d 788 (Ct. App. 1997), which affirmed the use of Wis JI—Civil 3260 for the strict liability claim arising from an injury to a two-year-old child bystander.

[10] *Howes v. Hansen,* 56 Wis. 2d 247, 201 N.W.2d 825 (1972).

[11] The injured child in this case is Richard Howes II. However, because this case came before us twice, the naming convention we will use to describe the two cases is *Howes I* for the 1972 decision and *Howes II* for the 1976 decision.

whether strict products liability claims may only be advanced by injured users and consumers.

¶ 40. After acknowledging that our prior decision in *Dippel* only allowed users and consumers to recover, the court chose to extend coverage to bystanders, holding that a manufacturer is strictly liable "when he places a defective article on the market 'that causes injury to a human being.' " *Id.* at 260 (quoting *Greenman v. Yuba Power Prods., Inc.,* 377 P.2d 897, 900 (Cal. 1963)).

¶ 41. The court extended protection because the rationale supporting protection for users and consumers was equally applicable to bystanders. *See Howes I,* 56 Wis. 2d at 255. The court noted the reasons articulated in *Dippel* for protecting users and consumers, including the fairness of compensating for injury, the cost and risk-distribution effects of strict products liability, and the deterrent effect on manufacturers. *Id.* These policy goals support the extension of recovery to bystanders, the court reasoned, because there is "no essential difference between the injured user or consumer and the injured bystander."[12] *Id.* However, plaintiff bystanders still needed to prove the product was unreasonably dangerous in order to recover. *Id.* at 258.

¶ 42. The Horsts claim that *Howes I* is dispositive, and suggest that we cannot legitimately reconcile a rejection of their proposed bystander contemplation test with this case.

¶ 43. Deere, on the other hand, concedes that *Howes I* allows an injured bystander to pursue a strict

---

[12] The opinion noted that some courts suggested bystanders should have more protection than consumers because of their disadvantaged position. *Id.* at 260. This dicta, however, was neither adopted by the court nor made part of the holding.

products liability claim, but disputes that it creates or adopts a bystander contemplation test. Deere points out that the case contains no language indicating that the question of whether a product is unreasonably dangerous in bystander cases is evaluated from the perspective of the ordinary bystander. *Howes I* merely holds, according to Deere, that a manufacturer may be strictly liable in tort when he places a defective article on the market that causes an injury to any human being, including bystanders. The case did not, Deere contends, modify the test for whether the product was defective/unreasonably dangerous.

¶ 44. We acknowledge the broad language *Howes I* occasionally uses, especially the statement that there is "no essential difference between the injured user or consumer and the injured bystander." *Id.* at 260. But this statement cannot be pulled out of its issue-sensitive context and used to support an entirely different legal proposition. With respect to who may recover, there truly are no good reasons to limit recovery to injured users and consumers. But with respect to determining whether a product is unreasonably dangerous, there are significant differences (outlined more fully below) between a standard based on the expectations of an ordinary consumer and a standard based on the expectations of an ordinary bystander.

██

¶ 45. In short, *Howes I* did not purport to address a proposition greater than the legal question before that court. Our holding today, rejecting a bystander contemplation test, leaves intact and indeed reaffirms the basic holding of *Howes I:* Bystanders injured by an unreasonably dangerous product may assert a strict products liability claim against the manufacturer or seller.

### 2. *Howes II*[13]

¶ 46. Following the decision in *Howes I,* all other defendants except Deere settled out of court. *Howes II,* 71 Wis. 2d at 270. The claims against Deere went to trial. At the end of trial, the circuit court directed the plaintiffs to elect between one of the two theories of liability for submission to the jury—either negligence or strict products liability. *Id.* at 271. While indicating a preference for strict products liability, the plaintiffs submitted a proposed special verdict covering both theories. *Id.* The circuit court rejected the dual theory verdict form, and instead submitted a final special verdict question regarding liability, which read as follows: "Was the John Deere mower in question, when it left the possession of the manufacturer, Deere & Company, defective in design so as to be unreasonably dangerous to a bystander?" *Id.* The jury found that Deere was not liable, and the Howes appealed. *Id.* at 272. After review, we reversed and remanded for a new trial, holding that plaintiffs were incorrectly forced to choose between alternative theories. *Id.* at 272–75.

¶ 47. The Horsts find this case especially pertinent because of the language used in the special verdict question, asking whether the product was "defective in design so as to be unreasonably dangerous to a bystander?" This special verdict question was nearly identical to the Horsts' proposed special verdict question that was denied by the trial court.

¶ 48. Deere counters that the court in *Howes II* did not consider or analyze the propriety of the special verdict question. Rather, the case was reversed because of the trial court's erroneous decision requiring plain-

---

[13] *Howes v. Deere,* 71 Wis. 2d 268, 238 N.W.2d 76 (1976).

tiffs to choose between strict products liability and negligence theories of liability.

¶ 49. In *Howes II,* the special verdict question was admittedly almost identical to the Horsts' proposed special verdict question. But the special verdict question was not affirmed or intentionally addressed by the court. We also do not know how the trial court instructed the jury to determine whether the product was unreasonably dangerous.[14] On this point, which is the central question we address today, *Howes II* is no more helpful or determinative than *Howes I.*

### 3. *Vincer*[15]

¶ 50. In July of 1970, two-year-old Curt Vincer was visiting his grandparents' house when he fell into the unsupervised swimming pool in their backyard. *Vincer,* 69 Wis. 2d at 327. As a result, Curt was severely brain damaged and became totally disabled. *Id.* The above-ground swimming pool had a retractable ladder that was allegedly left in the down position. *Id.* This allowed Curt to climb the ladder and fall into the pool. *Id.*

¶ 51. Curt (through his guardian ad litem) and his parents sued the swimming pool company and the company that sold and installed the pool. *Id.* They claimed that the swimming pool's design was defective

---

[14] We note here and further address in footnote 23 below that, because bystanders may recover, it does not matter who a product is dangerous to (i.e.—a bystander versus a user or consumer). What matters is whether the product is unreasonably dangerous as an objective matter. Today we address the proper test for making that determination when bystanders are injured.

[15] *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.,* 69 Wis. 2d 326, 230 N.W.2d 794 (1975).

because there was no self-latching gate preventing entry into the pool. *Id.* at 331. The legal issue before the court was whether the complaint stated a cause of action against the two defendants. *Id.* at 329. The court's opinion was primarily focused on the determination of when a product is unreasonably dangerous. This court affirmed that the consumer contemplation test was the proper framework for analyzing design defect cases:

> Thus, the test in Wisconsin of whether a product contains an unreasonably dangerous defect depends upon the reasonable expectations of the ordinary consumer concerning the characteristics of this type of product. If the average consumer would reasonably anticipate the dangerous condition of the product and fully appreciate the attendant risk of injury, it would not be unreasonably dangerous and defective. This is an objective test and is not dependent upon the knowledge of the particular injured consumer. *Id.* at 332.

¶ 52. This court ultimately found that the dangers inherent in a swimming pool were obvious, and that the average consumer would be completely aware of the risk of harm to unsupervised small children when a ladder for the pool is left in a down position. *Id.* at 333. The court concluded that the pool was as safe as it could reasonably be, that it was not defective as a matter of law, and that the complaint therefore did not state a cause of action. *Id.* at 331.

¶ 53. The Horsts contend that *Vincer* does not stand for the proposition that the consumer contemplation test is applicable in all § 402A cases. They argue that *Vincer* is not a bystander injury case at all, much less one where the product poses a risk of harm to bystanders alone. Rather, the danger in *Vincer* was the same for everyone, and therefore the consumer contem-

plation test was appropriate. In any event, the Horsts contend use of the bystander contemplation test would have yielded the same result.

¶ 54. Deere argues that this case is far weightier than the Horsts would like to admit. They submit that this is a bystander injury case in which this court explicitly adopted and applied the consumer contemplation test, decisively confirming it as the proper standard for Wisconsin products liability actions. Deere maintains that the court correctly focused on the risk of harm to a child bystander from the perspective of the "average consumer." Deere also notes that the Standard Jury Instructions post-*Vincer* (1975) and post-*Howes II* (1976) describe the consumer contemplation test, and do not describe a bystander contemplation test or contain any unique language for when the injured person is a bystander.

¶ 55. We need not decide whether *Vincer* is a bystander case. It may be that the injured child in *Vincer* was a "user" of the pool by virtue of being in the pool when the injury occurred. On the other hand, § 402A explains that a user "includes those who are passively enjoying the benefit of the product" (§ 402A cmt. l), and it is self-evident that the drowning two-year-old was neither using the pool for its intended purpose nor enjoying the benefit of the pool. However the *Vincer* case is construed, it is clear that it strongly supports the notion that even when the injured person is not an ordinary user or consumer (which the child surely is not), the consumer contemplation test, which looks at the expectations of the ordinary adult user or consumer, is the framework under which a product's defectiveness is to be governed. We do not vary the test depending on the status of the injured person.

172

### 4. *Komanekin*[16]

¶ 56. In this case from the Eastern District of Wisconsin, five-year-old Jamie Komanekin was severely injured by a propane delivery truck that had come to his home. *Komanekin,* 819 F. Supp. at 804–05. While playing unsupervised, Jamie somehow snagged his clothing near the connection to the pump, getting his arms tangled in the rotating drive-shaft of the truck's pumping system. *Id.* at 805. The accident was not caused by any malfunction of the pumping system itself, which worked as intended. *Id.*

¶ 57. The Komanekins sued a number of companies involved in the manufacture and assembly of the pumping system device that was attached to the propane delivery truck. *Id.* at 804. They alleged that the defendants should be found strictly liable for selling defectively designed products, and liable for negligence in the design of those products. *Id.* at 808. The defendants then moved for summary judgment. *Id.* at 811.

¶ 58. In its opinion, the Eastern District of Wisconsin described the injured child as a bystander, and rightly stated that he may assert a strict products liability claim just like a user or consumer under *Howes I. Id.* at 809. After acknowledging Wisconsin's reliance on the consumer contemplation test, the court stated:

> In a bystander case, presumably, a product is unreasonably dangerous if it presents dangers not apparent to the ordinary bystander. Thus, a product not unreasonably dangerous to the ordinary user or consumer might well be unreasonably dangerous to the ordinary bystander.

---

[16] *Komanekin v. Inland Truck Parts,* 819 F. Supp. 802 (E.D. Wis. 1993).

*Id.* at 809. The court ultimately denied defendants' motion for summary judgment because it believed there was a genuine issue of material fact as to whether an ordinary bystander would appreciate the danger posed by the truck's pumping system. *Id.* at 809–11.

¶ 59. Though not a decision of this court, the Horsts highlight this case because the *Komanekin* court used a bystander contemplation test, concluding that it was the logical outgrowth of *Howes I.*

¶ 60. Deere counters that the court's analysis was dicta, and in any event, the court's use of "presumably" shows a hesitance and lack of clarity regarding the proper test.

¶ 61. The court in *Komanekin* clearly did apply a bystander contemplation test, but in our reading, did so without any analysis or consideration of the implications of such an approach. The court erred in assuming that because bystanders can recover, the perspective of the ordinary bystander should control. *Howes I* does not compel this conclusion, and we reject it.

 5. *Green*[17]

¶ 62. Plaintiff Linda M. Green filed suit when she suffered injuries from allergic reactions to the proteins in latex medical gloves manufactured by Smith and Nephew AHP, Inc. ("S & N"). Green alleged that S & N should be held strictly liable for her injuries. *Green*, 245 Wis. 2d 772, ¶ 1. After trial, a jury returned a verdict in favor of Green, finding that S & N's gloves were defective and unreasonably dangerous. *Id.*, ¶ 19. The court of appeals affirmed. *Id.*, ¶ 2.

¶ 63. Our review addressed two evidentiary questions and, more importantly for our purposes here,

---

[17] *Green*, 245 Wis. 2d 772.

174

whether the jury was properly instructed that the consumer contemplation test is (and should be) the law for strict products liability cases in Wisconsin. We answered in the affirmative. We rejected a move to the standard outlined in § 2(b) of the Restatement (Third), and reiterated that "Wisconsin strict products liability law applies the consumer-contemplation test and only the consumer-contemplation test in all strict products liability cases." *Id.*, ¶¶ 34–35.

¶ 64. The Horsts acknowledge that *Green* reaffirmed Wisconsin's adherence to the consumer contemplation test, but point out that the issue in *Green* had nothing to do with bystanders. The Horsts insist that the bystander contemplation test is simply a variation of the consumer contemplation test affirmed in *Green*.

¶ 65. Deere counters that *Green*'s broad holding is applicable here. The court unambiguously stated that the consumer contemplation test "and only the consumer-contemplation test" applies "in all strict products liability cases."

¶ 66. In our view, the analysis in *Green* is instructive, though not determinative. The Horsts are correct that the facts in *Green* did not involve bystanders, and thus, we cannot say that *Green* answers the question before us today. That said, we were well aware when we decided *Green* in 2001 that bystanders can recover in strict products liability.[18] Yet, the opinion made no concession and left no room for exceptions to the rule that the expectations of the consumer or user guide the determination of whether the product was defective/ unreasonably dangerous.

---

[18] It is indicative of the court's intent to adhere to the consumer contemplation test that the majority cited our opinion in *Howes I* on two occasions. *Green*, 245 Wis. 2d 772, ¶¶ 56, 69.

### 6. Case Law Conclusion

¶ 67. This review leads us to the conclusion that while the language in these prior cases is suggestive, no Wisconsin Supreme Court case directly answers the question before us.[19] Our holding today clarifies the law related to the consumer contemplation test; it impinges on no precedent and does not require us to overturn or modify the holding of any prior cases.

### D. The Consumer Contemplation Test Governs All Strict Products Liability Cases.

¶ 68. We reject the proposed bystander contemplation test and reiterate that the consumer contemplation test is the proper standard for all strict products liability cases.

¶ 69. At its root, the bystander contemplation test is inherently unworkable. While an ordinary consumer or user of a product can be said to have some objective expectations regarding a product, the same cannot be said of bystanders. The consumer contemplation test was developed in recognition of the fact that it is reasonable for users and consumers of products to hold certain expectations regarding the products they use and the products they buy. *See* Rebecca Korzec, *Dashing Consumer Hopes: Strict Products Liability and the Demise of the Consumer Expectations Test,* 20 B.C. Int'l

---

[19] While *Komanekin* did answer the question, it was a federal case, not one of our precedents. No prior Wisconsin state cases have addressed this question directly. The Horsts admit as much in their brief, stating that "[n]o Wisconsin court has considered the § 402A liability standard to be applied where a product design creates a risk of harm to bystanders alone."

& Comp. L. Rev. 227, 232 (1997) ("[T]he consumer expectations test is the natural, logical outgrowth of strict products liability as the extension of implied warranty law."). Thus, the concept of an "ordinary consumer" has some reasonably objective content. But bystanders may have no familiarity with a product. This is especially so in complex design defect cases. What does a bystander expect of the technical design and reasonably available safety features of a product he or she does not buy, does not use, and may not even be aware of?

¶ 70. In addition, it is difficult, if not impossible, to discern who an "ordinary" bystander is and what they know. To illustrate, if a bystander is injured by a combine on a farm, is the "ordinary" bystander a neighboring farmer or a life-long urbanite who cannot tell you what a combine does?[20] In short, the notion of an "ordinary bystander" is a concept without content.

¶ 71. One of the basic requirements of a coherent legal test is that it offer a framework for analyzing claims that provides some measure of predictability. *See* Antonin Scalia, *The Rule of Law as a Law of Rules,* 56 U. Chi. L. Rev. 1175, 1179 (1989) ("Rudimentary justice requires that those subject to the law must have the means of knowing what it prescribes."). Predictability is important in the law because it allows citizens and businesses to shape their behavior accordingly.

¶ 72. This is particularly important in strict products liability, where one of the main purposes is to incentivize manufacturers to research and implement

---

[20] A combine is a "power-operated harvesting machine that cuts, threshes, and cleans grain." *The American Heritage Dictionary of the English Language* 377 (3d ed. 1992).

safer designs. If a manufacturer cannot predict with some degree of accuracy when its product is and is not unreasonably dangerous, it will not be able to efficiently adopt appropriate safety precautions. This uncertainty may lead some manufacturers to needlessly remove useful products from the market. The bystander contemplation test would move our state further away from the goal of an efficient deterrent effect on manufacturers by creating unpredictability. Manufacturers and all members of the business community need the ability to anticipate how their choices will be adjudicated in a court of law. Because it does not provide the requisite predictability, the bystander contemplation test fails this basic measure of a legal test.

¶ 73. Although noted earlier, it is important to emphasize that strict products liability is not absolute liability. And a bystander contemplation test comes dangerously close to absolute liability by adopting an amorphous, ambiguous, and standard-less test that effectively gives a jury the power to find a manufacturer liable under almost any conceivable fact situation. This would impose huge and unjustified burdens on businesses (and through businesses, consumers as well). That is not what strict products liability is about, and that is not where we will take it.

¶ 74. Another problem with the bystander contemplation test is that it changes the focus from the product to the injured party, creating discordant results. A bystander contemplation test would in effect create different levels of duty for strict products liability purposes, blurring the line between negligence and strict products liability. Manufacturers would owe a certain level of duty to the user or consumer, and a different, likely higher level of duty to a bystander. This is true because a jury could plausibly find a bystander to

178

have higher expectations with respect to the safety and design features of a product than the user or consumer of that same product. This opens the door to a jury finding the same product unreasonably dangerous under some circumstances, but not others, depending on who was injured. Under the Horsts' scheme, a manufacturer could be strictly liable if its product causes injury to a bystander, but not be strictly liable if a consumer suffers the same injury from the same product. Strict products liability, particularly design defect cases, should ensure that *products* are not unreasonably dangerous, not create different levels of duty and incongruous liability, depending on who is injured.

¶ 75. The Horsts' suggested application of the bystander contemplation test is equally puzzling. They argue it applies only when the threat of injury is to a bystander alone. It is difficult to conceive of a situation where a product is dangerous to a bystander, yet poses no danger to a user or consumer. The Horsts say that is the case here, but surely there is some danger to the user of a riding lawn mower who is driving in reverse. Undoubtedly, the risk of danger is much lower than the danger of running over an unsuspecting child, but it does exist. This means that, under the Horsts' proposal, the bystander contemplation test would not be appropriate here, and may never be.

¶ 76. Perhaps the Horsts do not mean to suggest a danger must be to bystanders "alone" for the bystander contemplation test to apply. It may be that merely a greater risk of danger to the bystander should trigger application of the bystander contemplation test. But this approach would likely require a legal and factual determination by the judge before instructing the jury as to whether the danger posed by a product is greater

179

to bystanders than to users or consumers.[21] It is not clear how a judge would make such a determination or what procedures he or she would use. It seems that if a bystander contemplation test were adopted, it ought to govern whenever a bystander is injured, avoiding any sort of early judicial fact-finding as to the potential danger posed by a product.[22] This, however, is not what the Horsts propose.

¶ 77. The Horsts also argue in their brief that if we reject their proposed test, we "completely eliminate[] any duty owed by manufacturers to bystanders in cases where the risk of bodily injury is unique to bystanders." It is true that under our holding today, where a product is not unreasonably dangerous based on the expectations of the ordinary user or consumer, the bystander does not receive additional protections. But if a product is unreasonably dangerous in light of the expectations of the ordinary user or consumer and a bystander is injured, a strict products liability claim remains available. In addition, the Horsts ignore the availability of recovery under negligence. They are understandably dissatisfied with that avenue of recovery because the jury considered it in this case, and found that Jonathan's parents, and not John Deere, were negligent in the tragic injury to Jonathan.

---

[21] In fact, this legal/factual determination by the judge would probably be required even under the Horsts' suggested application of the test. Under their approach, a determination must be made before instructing the jury that the danger is to bystanders alone, and not to users or consumers.

[22] To be clear, we reject the bystander contemplation test. Our point is to show that the Horsts' more limited suggested application of this test has many practical problems.

¶ 78. Additionally, a user or consumer's expectations regarding a product will often include safety expectations relating to bystanders. That is, users and consumers do not just have expectations regarding their own safety; they expect that a product will be reasonably safe for bystanders as well. Juries can certainly take this into account in their deliberations and evaluation of whether a product is unreasonably dangerous.[23]

---

[23] The special verdict question in this case asked: "Do you find from the evidence that the subject lawn mower, when it left the hands of Defendant Deere & Company, was in a defective condition so as to be unreasonably dangerous to a prospective user/consumer?" The trial court rejected a plea by the Horsts to add "or bystander" to the end of the special verdict question. The jury was further instructed that to answer "yes" to the special verdict question, they were required to find, among other things, that "the defective condition made the product unreasonably dangerous to people."

We think a better special verdict question need not query to whom the product is unreasonably dangerous. The question is not whether a product is unreasonably dangerous to a user or consumer versus unreasonably dangerous to a bystander. The question is simply whether a product is unreasonably dangerous. And the determination of whether a product is unreasonably dangerous is an objective inquiry based on the expectations of an ordinary user or consumer. Any injured person, whether a bystander or user or consumer, may recover if injured by an unreasonably dangerous product.

The dissent asserts that the jury instructions in Wis JI—Civil 3260, even with the trial court's insertion making clear the availability of recovery for bystanders, were wrong and misleading. Dissent, ¶¶ 120–128. Though the standard jury instructions are not as clear as we would prefer, when viewed as a whole, the jury instructions given here sufficiently conveyed that a bystander may recover if the product was unreasonably dangerous, and that such a determination is based on the expectations of the ordinary user or consumer.

¶ 79. The Horsts also argue that our holding today impermissibly delegates the duty to make a product safe to the user or consumer. But this is begging the question; it assumes a product is unreasonably dangerous. If a product is not unreasonably dangerous (based on consumer expectations), the user or consumer has no duty to make the product safe for bystanders because, by definition, it is sufficiently safe for strict products liability purposes. Users and consumers simply have a duty to use the potentially, but not unreasonably dangerous product with the appropriate standard of care toward their fellow citizens, as they do in all of life.

¶ 80. Finally, even if we accept the Horsts' proposed test, we have difficulty seeing how an ordinary bystander's contemplation (to the extent it exists) would be significantly different than a consumer's contemplation in this case.[24] Everyone is aware that a lawn

---

The dissent fails to acknowledge that the jury instructions themselves define when a product is "unreasonably dangerous to the ordinary user or consumer," and that is "when it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer possessing the knowledge of the products' characteristics which were common to the community." In other words, the instructions define the phrase that so troubles the dissent and do so by reference to the consumer contemplation test. Moreover, the inconsistency between the instruction's dual statements that the product must be unreasonably dangerous to "a prospective user/consumer" and later to "people" is harmless.

[24] In other courts around the country, plaintiffs proceeding in strict liability upon the injury to a child have argued that it is the expectations of an ordinary child that should govern. Courts have resoundingly rejected this argument, in large part because children do not have expectations regarding the dangers of certain products. Courts have thus held that it is the

182

mower is very dangerous. While a bystander may or may not be aware or expect a lawn mower to go in reverse, a bystander would certainly know that it is dangerous to allow an unsupervised two-year-old child to play in the yard while it is being mowed.[25] The risks

ordinary consumer or user's expectations that govern. *See Kelley v. Rival Mfg. Co.,* 704 F. Supp. 1039, 1043 (W.D. Okla. 1989) (in a case involving a small child who was injured by pulling a crock-pot onto himself, the question of whether the crock-pot was unreasonably dangerous is determined by the perspective of the parent consumer who purchased the product, not the perspective of the minor child) (applying Oklahoma law); *Curtis v. Universal Match Corp., Inc.,* 778 F. Supp. 1421, 1425 (E.D. Tenn. 1991) (in a case involving a two-year-old child whose diaper was set on fire by his three year old brother, the question of whether the lighter was unreasonably dangerous is determined by the contemplation of the ordinary adult consumer, not the viewpoint of the minor child) (applying Tennessee law); *Welch v. Scripto-Tokai Corp.,* 651 N.E.2d 810, 814–15 (Ind. Ct. App. 1995) (in a case involving a child who suffered injuries after lighting his pajamas on fire when playing with a lighter, the question of whether the lighter was unreasonably dangerous is determined by the perspective of the ordinary adult consumer, not the perspective of the minor child) *Bellotte v. Zayre Corp.,* 352 A.2d 723, 725–26 (N.H. 1976) (in a certified question from the First Circuit Court of Appeals involving a five-year-old whose pajamas were set on fire when playing with matches, the New Hampshire Supreme Court stated that the question of whether the pajamas were unreasonably dangerous should be based on the expectations of consumer parents) (note, New Hampshire has moved away from the consumer contemplation test and now engages in a risk-utility balancing test).

[25] The Horsts state the question as follows: "[I]f the ordinary bystander would have expected Deere to design its mower so that it would be incapable of mowing in reverse, instead of simply instructing operators not to do so, Deere breached its § 402A duty to bystanders." But the issue is not whether a bystander (or consumer) would expect the lawn mower to go in

here are known to all people, including bystanders. The jury confirmed this in finding that Jonathan's parents were the negligent actors. To argue that a bystander is less aware of the very real dangers present here strains credulity.

¶ 81. This truly was a tragic injury, but we cannot simply invent legal theories to make the manufacturer pay for the injuries. This was a horrible accident caused by the negligent use of the lawn mower and negligent supervision of the boy by his parents. At the end of the day, as has been noted elsewhere in a case involving almost precisely the same legal claims, a lawn mower is a lawn mower[26]—it is dangerous, and accidents happen. A bystander contemplation test is a creative, but ultimately unsupported, unwise, and unfair attempt to create liability where none exists.

## IV. CONCLUSION

¶ 82. We hold that the consumer contemplation test, and not a bystander contemplation test, governs all strict products liability claims in Wisconsin, including cases where a bystander is injured. While bystanders may recover when injured by an unreasonably dangerous product, the determination of whether the product is unreasonably dangerous is based on the expectations of the ordinary consumer. Therefore, the jury was properly instructed and the decision of the court of appeals is affirmed.

---

reverse, but whether a bystander (or consumer) would appreciate the danger posed by the RIO-equipped lawn mower to a two-year-old child.

[26] Transcript of Record at 4, *Brown v. Sears, Roebuck & Co.*, 328 F.3d 1274 (10th Cir. 2003) No. 01–4226 ("A lawn mower is a lawn mower.").

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 83. ANNETTE K. ZIEGLER, J. did not participate.

¶ 84. N. PATRICK CROOKS, J. (*concurring*). I join the majority opinion, but I write separately in response to Justice Gableman's concurrence, in which he urges the adoption of Restatement (Third) of Torts: Products Liability § 2(b) in design defect cases. Justice Gableman's concurrence, ¶ 104. In the briefing that was provided for this case, references to § 2(b) were made in passing in three places. There are two footnotes in the petitioners' reply brief, one of which refers to the rationale underlying § 2(b), cmt. 1. and suggests that it supports a bystander contemplation test, and one of which suggests that the risk-utility test would be appropriate in bystander cases, though inappropriate in consumer cases. (At oral argument, the Horsts' attorney stated, "I didn't argue for the adoption of a risk-utility test." *See* Justice Bradley's dissent, ¶ 130 n.1.) There is also a paragraph in a non-party brief where amicus argues that as to the bystander question the case would come out the same under either the Restatement (Second) or Restatement (Third) because neither treats the bystander's expectations differently from the ordinary consumer's expectations.

¶ 85. These glancing references to Restatement (Third) provide an exceedingly flimsy basis for reaching the question of whether the court should adopt § 2(b) in design defect cases. Because any consideration of such a fundamental change in Wisconsin law should not be done without a full and thorough briefing followed by oral arguments before this court, I believe we should decline to reach beyond the controversy the parties ask

185

us to resolve, which in this case is whether Wisconsin law recognizes a bystander contemplation test. It does not. That is as far as we should go. As I state in my concurrence in *Godoy v. E.I. DuPont de Nemours & Co.*,[1] released today, we need briefing and oral arguments before deciding to make a sea change in Wisconsin law—one that could result in throwing out forty-two years of precedent beginning with *Dippel v. Sciano,* 37 Wis. 2d 443, 155 N.W.2d 55 (1967).

¶ 86. I therefore respectfully concur.

¶ 87. MICHAEL J. GABLEMAN, J. *(concurring)*. I write separately because this case highlights some of the serious deficiencies with our current approach, the "nearly universally reviled"[1] consumer contemplation test, to determining whether a product is unreasonably dangerous in design defect products liability cases. As the majority opinion makes clear, a bystander contemplation test is not the answer. Rather, I believe it is time for this court to adopt the Restatement (Third) of Torts: Products Liability (hereafter "Restatement (Third)") § 2(b) (1998) in design defect cases. My purpose here is not to make a comprehensive case for the adoption of the Restatement (Third).[2] My goal instead is to examine some of the numerous reasons I believe this court should reconsider its adherence to the consumer contemplation test, reasons that this case brings to the fore.

---

[1] *Godoy v. E.I. DuPont de Nemours & Co.,* 2009 WI 78, ___ Wis. 2d ___, 768 N.W.2d 674.

[1] Douglas A. Kysar, *The Expectations of Consumers,* 103 Colum. L. Rev. 1700, 1701 (2003).

[2] I joined Justice Prosser's excellent concurrence in *Godoy v. DuPont,* 2009 WI 78, ___ Wis. 2d ___, 768 N.W.2d 674, which ably makes a fuller case for the Restatement (Third) of Torts: Products Liability ("Restatement (Third)") § 2(b) (1998).

¶ 88. The Restatement (Third) is simply a more appropriate framework for meeting the needs of Wisconsin consumers, businesses, and all those whose lives are affected by commerce in this state. It is better for consumers and users of products because it holds manufacturers and sellers accountable for all foreseeable injuries that can be prevented with a reasonable alternative design. The Restatement (Third) is better for manufacturers and sellers because it provides clear direction and a predictable standard. It is also better for bystanders because it places them on a level playing field with consumers and users. By focusing the inquiry on foreseeable injuries and thus providing a greater degree of coherence, consistency, and predictability, the Restatement (Third) requires manufacturers to be aware of the dangers unique to bystanders and plan accordingly. The Restatement (Third), then, provides a framework that is fairer to manufacturers and injured persons, especially bystanders, and Wisconsin should adopt it.

## I. BACKGROUND

¶ 89. The Restatement (Second) of Torts § 402A (1965) (hereafter "§ 402A"), which Wisconsin adopted in *Dippel v. Sciano,* 37 Wis. 2d 443, 155 N.W.2d 55 (1967), sets forth the basic parameters of a strict liability claim.[3] Comment i outlines the test for determining whether a product is unreasonably dangerous, providing that the product "must be dangerous to an extent beyond which would be contemplated by the ordinary

---

[3] The Restatement (Second) of Torts § 402A (1965) (hereafter "§ 402A") provides as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is

consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." § 402A cmt. i. This test is called the consumer contemplation or consumer expectations test.

¶ 90. Section 402A was not drafted to address the design defect line of cases. *See* Introduction to Restatement (Third). It was instead written to address what came to be classified as manufacturing defect cases. *See* Douglas A. Kysar, *The Expectations of Consumers,* 103 Colum. L. Rev. 1700, 1713–14 (2003). The consumer contemplation test in § 402A was therefore formulated to respond to manufacturing defect cases—where, despite quality control mechanisms in place, a product was not made or did not function according to its design specifications.

¶ 91. It was not until after § 402A was published in 1965 that litigation over defects in design was addressed by experts and commentators. *See* Richard L. Cupp, Jr. & Danielle Polage, *The Rhetoric of Strict Products Liability Versus Negligence: An Empirical Analysis,* 77 N.Y.U. L. Rev. 874, 890–91 (2002) ("[C]ases involving conscious design decisions did not become common until the early 1970s."). Courts soon realized that the consumer contemplation test, which followed

subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

188

naturally from manufacturing defect cases, did not work as well for design defect cases. *Id.* at 891 ("[M]any courts quickly realized that using a consumer expectations test in design defect cases presents implications significantly different from those involved in applying the test to manufacturing-defect cases."); Restatement (Third) § 1 cmt. a.

¶ 92. Hence, courts began to move away from the consumer contemplation test in design defect cases and adopt some form of a risk-utility test. The Restatement (Third) § 2(b), published in 1998, identified and captured this shift in approach. It provides that a product is defective in design when the "foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design . . . and the omission of the alternative design renders the product not reasonably safe." Assessing whether a product is reasonably safe and whether a reasonable alternative design should have been adopted requires a "risk-utility" test that balances the costs and benefits of various design alternatives.[4] *Id.* at cmt. d.

## II. A NEW FRAMEWORK IS NEEDED

¶ 93. The consumer contemplation test as an independent test in design defect cases has been roundly, consistently, and justifiably criticized by commentators. Restatement (Third) § 2(b) cmt. d. One scholar, Douglas Kysar, calls the consumer contemplation test "a doctrine nearly universally reviled but stubbornly and

---

[4] Factors to be considered include the nature and strength of consumer expectations, the degree of the foreseeable risks of harm, the instructions and warnings accompanying the product, and the advantages and disadvantages of the original product and alternative design. Restatement (Third) § 2(b) cmt. f.

inexplicably persistent." Kysar, *supra,* at 1701. By the 1980s, he explains, "a consensus view among products liability scholars emerged that the consumer expectations test was both indefensible in theory and unworkable in practice." *Id.* Citing our decision in *Green v. Smith & Nephew AHP, Inc.*[5] as an example, Kysar calls judicial allegiance to the consumer contemplation test "puzzling in light of the aforementioned consensus view among commentators that the consumer expectations test is in one way or another harmful to plaintiffs, defendants, and the judicial process itself." Kysar, *supra,* at 1703.

¶ 94. Wisconsin, however, has stubbornly stuck with the anachronistic consumer contemplation test despite voluminous ongoing and unanswered criticism. This adherence is akin to insistence upon a horse-and-buggy approach in a space-age era. The two reporters for the American Law Institute who drafted the Restatement (Third) have called Wisconsin "the lone star state" and a "rogue" and "renegade" jurisdiction that, within the context of products liability cases, marches to its "own, sometimes quite peculiar, drummer." James A. Henderson, Jr. & Aaron D. Twerski, *A Fictional Tale of Unintended Consequences: A Response to Professor Wertheimer,* 70 Brook. L. Rev. 939, 940–41, 946 (2005).[6]

---

[5] *Green v. Smith & Nephew AHP, Inc.,* 2001 WI 109, 245 Wis. 2d 772, 629 N.W.2d 727.

[6] *See also* Victor E. Schwartz & Rochelle M. Tedesco, *The Re-Emergence of "Super Strict" Liability: Slaying the Dragon Again,* 71 U. Cin. L. Rev. 917, 918 (2003):

> *Green v. Smith & Nephew AHP, Inc.,* 2001 WI 109, ¶ 122, 245 Wis. 2d 772, 629 N.W.2d 727, takes the development of product liability in Wisconsin in an aberrant direction. The Wisconsin Supreme Court advanced in that direction by clinging to an almost universally criticized version of the "consumer expectations" test.

¶ 95. One of the major criticisms of the consumer contemplation test is that it is an exceedingly vague standard for design defect cases.[7] *See* W. Page Keeton, *Prosser & Keeton on Torts* § 99, 699 (5th ed. 1984) (discussing how the consumer contemplation test "can be utilized to explain most any result that a court or jury chooses to reach"). As one treatise explains:

> A[n] . . . especially problematic aspect of the consumer contemplation test lies in the vagueness of consumer expectations in many contexts. Particularly in considering the design adequacy of a complex product—such as an automobile, a pharmaceutical drug, or other chemical product—consumers often have no meaningful idea how safely the product really ought to perform in various situations. How can an ordinary consumer possibly know the extent of crash protection or injury fairly to expect when an automobile crashes into a tree at 10, 20, or even 40 miles per hour? Lurking at the very heart of the consumer expectations test, the vagueness problem undermines the test in the most complex cases where a reliable standard of liability is needed most.

David G. Owen, *Owen's Hornbook on Products Liability* § 5.6 (2d ed. 2008). When a standard is vague, it is less useful, and less legitimate as a rule of law because

---

Both liberal and conservative courts have recognized that the consumer expectations test used by the Wisconsin Court is not an appropriate standard for judging design defects. In addition to clinging to the consumer expectation test, the Wisconsin Supreme Court refused to adopt the more modern and coherent standard for liability set forth in the Restatement (Third) of Torts: Products Liability. Finally, *after adhering to the consumer expectations test and refusing to adopt the Restatement (Third) of Torts: Products Liability, the Wisconsin Supreme Court took an additional step and joined the small, highly criticized minority of state courts that have imposed super strict liability in products liability cases.*

(Emphasis added.)

[7] This criticism holds true in even greater measure for a bystander contemplation test as well. *See* majority op., ¶¶ 71–73.

citizens cannot anticipate the lawfulness of their actions and adjust their behavior accordingly. *See* majority op., ¶¶ 71–73; *see also* Kysar, *supra,* at 1715 (discussing the widely held view that "consumer expectations provide only the most meager and insufficient guidance to factfinders charged with the difficult task of assessing the adequacy of a product design," making the test " 'so vague as to be lawless' ") (quoting James A. Henderson, Jr. & Aaron D. Twerski, *Achieving Consensus on Defective Product Design,* 83 Cornell L. Rev. 867, 882 (1998)); *see also id.* at n.60 (citing additional authorities who criticize the vague nature of the consumer contemplation test).

¶ 96. The Restatement (Third), however, offers coherence, consistency, and predictability because it is based on a more objective standard. Manufacturers are aware of alternative designs that may be available for their products, as well as the costs and benefits of those designs. A jury's determination, on the other hand, of an "ordinary" consumer's expectations about design and safety features is guesswork, with potentially disastrous consequences for the manufacturer if wrong. The more predictable standards in the Restatement (Third) will promote the efficient implementation of safety precautions better than the less predictable consumer contemplation test because the risks are, by definition, foreseeable and reasonably preventable.

¶ 97. Another problem with the consumer contemplation test is the practical reality that consumer/user expectations might be determined by a jury to be either unrealistically and unreasonably high or unacceptably low when compared with the optimum level of safety.

¶ 98. Consumer expectations may be unrealistically and unreasonably high in that a manufacturer might be held liable for injuries it did not or should not

have reasonably foreseen, or when alternative designs were not reasonably available—for instance, expectations that a knife should not be able to cut off fingers or a car should not be able to rollover. This is the danger of absolute liability—holding manufacturers liable for all injuries resulting from their products. No court openly desires such a system. The Restatement (Third) helps avoid unreasonably high expectations with its negligence-style evaluation of the costs and benefits, imposing liability for only reasonably foreseeable injuries or injured persons. *See* Restatement (Third) 2(b) cmt. a; Owen's, *supra,* § 8.8.

¶ 99. Alternatively, consumer expectations may be unacceptably low. One example is the open and obvious danger doctrine, which precludes recovery when a product is manifestly dangerous. Because consumers and users know of the danger, the level of danger is in accord with their expectations, and they are unprotected. But this result may neither be fair nor adequate to compensate injured persons where an open and obvious danger can be eliminated with the implementation of a simple, relatively low-cost safety feature. Owen's, *supra,* § 8.3 ("[A] dire consequence of the consumer expectations test . . . is that it effectively rewards manufacturers for failing to adopt cost-effective measures to remedy obviously unnecessary dangers to human life and limb."). The Restatement (Third) rejects the open and obvious danger doctrine, providing greater protection to injured persons and greater accountability for product manufacturers. *See* Restatement (Third) § 2(b) cmt. d. ("The fact that a danger is open and obvious is relevant to the issue of defectiveness, but does not necessarily preclude a plaintiff from establishing that a reasonable alter-

native design should have been adopted that would have reduced or prevented injury to the plaintiff.").

¶ 100. The Horsts argue that our rejection of a bystander contemplation test leaves bystanders unprotected. While this contention is plainly wrong (*see* majority op., ¶ 77), the Horsts are correct that the consumer contemplation test leaves bystanders less protected than they arguably should be. The facts of this case—where a bystander is injured by an allegedly defectively designed and therefore unreasonably dangerous product—serve to underscore and highlight the deficiencies in our current approach.

¶ 101. Bystanders face several inequities when compared with users and consumers under the current system. First, bystanders are less protected when a product poses a greater danger to a bystander than to the user or consumer. The instant case is a perfect example; a riding lawn mower is clearly more dangerous to bystanders than to the person driving the tractor. Second, bystanders do not have access to the instructions and warnings that assist and protect users and consumers. Third, bystanders are, to some extent, dependent for their safety on the care exercised by users of dangerous products. Finally, bystanders may not be aware of open and obvious dangers that a user or consumer perceives. In all these circumstances, bystanders are stuck with less protection and less control over their own safety, and, under the current system, with less access to compensation in the event of injury.

¶ 102. The Restatement (Third) levels this playing field by focusing the inquiry on the product itself, not the status of the injured person. The Restatement (Third) requires manufacturers to implement reasonably available safety features with regard to all fore-

194

seeable injured persons. This analytical framework provides more protection for injured persons than our current approach. This is especially true for bystanders,[8] many injuries to whom are reasonably foreseeable, thereby putting manufacturers on notice.

¶ 103. If the Restatement (Third) were the law in Wisconsin in this case, the Horsts would have had to prove that a reasonable alternative design was available at the time John Deere sold the 1999 LT160 riding lawn mower. Restatement (Third) § 2(b) cmt. a. The jury would have had to balance the costs and benefits and consider whether the risk of harm to Jonathan was foreseeable and could have been reduced or avoided if Deere had adopted a reasonably available alternative design to the RIO. The status of the injured person would have played no part in this analysis.

¶ 104. To conclude, Wisconsin's current approach in design defect cases is beset with serious deficiencies that the Restatement (Third) substantially rectifies. The failure to adequately protect bystanders is one of those deficiencies that deserves redress. In my opinion, the Restatement (Third) § 2(b) is a more coherent, consistent, and fair approach to

---

[8] The Horsts recognize this too, asserting the following in a footnote in their reply brief:

> If the Court were to conclude that a "bystander contemplation test" is too onerous on manufacturers, the Horsts submit that the risk/utility test adopted in Restatement (Third) of Torts, § 2, where the plaintiff must establish the viability of an alternative design, would be appropriate in bystander cases, even though inappropriate in consumer cases.

I have difficulty understanding why we have a "flimsy basis" (as Justice Crooks' concurrence asserts) for addressing an issue the petitioners asked us to address if we found against them on their chief argument.

products liability design defect cases. I would adopt it, and urge my colleagues to do the same.[9]

¶ 105. For the foregoing reasons I concur.

---

[9] The dissent makes several bald, unsupported, and blatantly incorrect assertions in chastising this concurrence. First, the dissent alleges that this concurrence raises the adoption of the Restatement (Third) sua sponte, and that neither party called upon the court to do so. Dissent, ¶¶ 129–130. The dissent is wrong. As noted above, the Horsts did ask this court to adopt the Restatement (Third) for bystander claims in the event that we rejected their proposed bystander contemplation test, which we have.

Second, the dissent claims that this concurrence reflects a fundamental misunderstanding of the role of appellate courts. *Id.*, ¶ 132. This baseless argument itself reflects a misunderstanding of the role of appellate courts. As the dissent well knows, strict products liability law in Wisconsin is, at least at present, a function of the common law. Unless and until the legislature intervenes, it is incumbent upon this court to decide our cases on the basis of sound legal principles. Strict products liability itself and our adoption of § 402A 42 years ago were a departure from past precedent because this court determined that the past framework no longer made sense. This concurrence is precisely within that common law tradition by responding to the plea by the Horsts, and pointing out that the facts of this case in particular illuminate the problems with our current approach, and call for a new, sounder framework.

Third, the dissent clouds the issue by citing a lineage of cases that would purportedly be over ruled or modified by adoption of the Restatement (Third) § 2(b) in design defect cases. The dissent goes too far. Although § 2(b) sets forth an approach that is analytically distinct from the consumer contemplation test, there is no reason, beyond the dissent's bald assertions, to believe that adoption of § 2(b) would in any way affect, much less over rule, the results reached in those cases. *See also Godoy v. E.I. du Pont de Nemours and Co.,* 2009 WI 78, ¶ 6 n.1, ___ Wis. 2d ___, 768 N.W.2d 674 (Prosser, J., concurring).

¶ 106. I am authorized to state that Justice DAVID T. PROSSER and Justice PATIENCE D. ROGGENSACK join this concurrence.

¶ 107. ANN WALSH BRADLEY, J. (*dissenting*). I agree with the majority that bystanders can recover in strict liability for a product that is unreasonably dangerous to bystanders, and that the test for products liability in Wisconsin measures the expectations of the ordinary consumer.

¶ 108. I write separately, however, because an improperly worded special verdict question asked the wrong question and the jury instruction which accompanied it misstated the law.

¶ 109. The majority masks the problem by concluding that the special verdict question and jury instruction are not as clear as it would prefer but that any error is harmless. Majority op., ¶ 78 n.23. I instead call it what it is when a jury is not asked to answer the central question in the case and is given an erroneous instruction: prejudicial error.

¶ 110. Additionally, I write separately to address Justice Gableman's concurrence, which sua sponte advocates for a sea change in the law of products liability, would discard over forty years of precedent, and would overrule scores of cases.

---

Finally, the dissent cautions a wait-until-argued approach to this issue. *Id.*, ¶ 133. However, this case brings the issues front-and-center, and exposes gaping holes in our design defect strict products liability jurisprudence. To fail to address the issues staring us in the face, as the dissent urges, would be to abdicate our role. That the dissent is unsure of its own view on these matters need not hamper the court's obligation to ensure our strict products liability law rests on a solid and workable and fair foundation.

¶ 111. For the reasons set forth below, I respectfully dissent.

I

¶ 112. The majority aptly sets forth the facts and relevant procedural history. Two-year-old Jonathan was injured when his father, Michael, was mowing the lawn using a John Deere riding lawn mower. The mower was equipped with a safety feature that stops both the engine and the blades when an operator begins to travel in reverse with the blades engaged. However, the lawn mower is designed with an override of this safety feature.

¶ 113. Michael decided to mow in reverse along the rear of the house and disengaged the safety feature. Unknown to him, Jonathan moved behind the mower, out of his father's line of sight. As the mower proceeded in reverse, it struck the two-year-old Jonathan, causing both of his feet to be severed.

¶ 114. The John Deere operating manual warns of danger to young children when the safety feature is disengaged and the mower is operated in reverse. The warnings provide:

- Before backing up, stop mower blades or attachments and look down and behind the machine carefully, especially for children.

- CAUTION: Avoid injury! Rotating blades are dangerous. Children or bystanders may be injured by runover and rotating blades. Before backing up, carefully check the area around the machine.

¶ 115. The Horsts filed a lawsuit against Deere & Company alleging that a mower which operates in reverse is unreasonably dangerous, and that the mower

198

should not have been designed with a device that can override the safety feature. At trial, the Horsts requested that the standard jury instruction, Wis JI—Civil 3260, be modified consistent with the law to reflect the facts of this case—that the safety override feature presented a danger to Jonathan, a bystander. They argued that the jury should not be asked whether the design presented a danger to the person using the machine. It was obvious that because Michael was riding on the mower, it presented no back-up danger to him. Rather, as the warnings noted, the danger presented was to the young child behind the mower.

¶ 116. The circuit court declined the Horsts' request, and instead asked the jury:

> Question No. 1: Answer this question: Do you find from the evidence that the subject lawn tractor when it left the hands of Defendant, Deere & Company, was in a defective condition so as to be *unreasonably dangerous to a prospective user/consumer?*

(Emphasis added.) The jury instructions explained:

> With respect to special verdict Questions #1 and #2, you are instructed as follows:
>
> A manufacturer of a product who places on the market a defective product which is *unreasonably dangerous to the ordinary user or consumer,* and which is expected and does reach the consumer without substantial change in the condition in which it is sold, is regarded by law as responsible for harm caused by the product . . . .
>
> . . . .
>
> A product is said to be defective when it is in a condition not contemplated by the ordinary user or consumer which is *unreasonably dangerous to the ordinary user*

*or consumer,* and the defect arose out of design, manufacture, or inspection while the article was in the control of the manufacturer. A defective product is *unreasonably dangerous to the ordinary user or consumer* when it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer possessing the knowledge of the product's characteristics which were common to the community. A product is not defective if it is safe for normal use.

A manufacturer is not under a duty to manufacture a product which is absolutely free from all possible harm to every individual. It is the duty of the manufacturer not to place upon the market a defective product which is *unreasonably dangerous to the ordinary consumer.* The law in Wisconsin imposes a duty on a manufacturer to a bystander, *if the bystander is injured by a defective product, which is unreasonably dangerous to the ordinary user or consumer.*

Question One (1) on the verdict form asks:

Do you find from the evidence that the subject lawn tractor when it left the hands of Defendant, Deere & Company, was in a defective condition so as to be *unreasonably dangerous to a prospective user/consumer?*

Before you can answer question One "yes," you must be satisfied that: (1) the product was in a defective condition; (2) the defective condition made the product *unreasonably dangerous to people;* (3) the defective condition of the product existed when the product was under the control of the manufacturer; and (4) the product reached the consumer without substantial change in the condition in which it was sold.

. . . .

(Emphasis added.)

¶ 117. The majority correctly states that since 1972, the law of Wisconsin has been that a manufac-

200

turer is strictly liable when it places a defective product on the market "that causes injury to a human being." Majority op., ¶ 40 (quoting *Howes v. Hansen* (*Howes I*), 56 Wis. 2d 247, 260, 201 N.W.2d 825 (1972)). The rationale for extending protection to bystanders is the same as the rationale for protecting consumers and users. *Id.*, ¶ 41. It concludes that therefore, "there truly are no good reasons to limit recovery to injured users and consumers." *Id.*, ¶ 44.

¶ 118. Accordingly, the majority determines that the special verdict question and jury instruction were not as clear as it would prefer and that the circuit court should not have limited the inquiry about whether the lawn mower was unreasonably dangerous to only "a prospective user/consumer." *Id.*, ¶ 78 n.23. Instead, the majority recognizes that the special verdict question should allow for the inquiry to include danger to a bystander. *Id.*

¶ 119. The majority attempts to salvage the error here by pointing to the following explanation buried in the special verdict: In order to determine that the product was defective, the jury must first find that "the defective condition made the product unreasonably dangerous to people." *Id.*; *see also id.* ¶ 13, n.3. Based on this sentence, the majority therefore concludes that any "inconsistency" between the incorrect question (whether the product is dangerous to a "user/consumer") and the correct question (whether the product is dangerous to "people") is "harmless." *Id.*, ¶ 78 n.23.

¶ 120. As the majority acknowledges, the special verdict question was wrong. It failed to ask the correct question. The question is not whether the product posed a danger to the father riding on the lawn mower, but rather whether it posed a danger to Jonathan, the young child behind it.

201

¶ 121. The problem with the special verdict question was exacerbated by the jury instruction. Five times, the instruction indicated that the product must be unusually or unreasonably "dangerous to the ordinary user or consumer." *See infra,* ¶ 116.

¶ 122. Further, in an attempt to cure the defect in the instruction, the circuit court added the following sentence: "The law in Wisconsin imposes a duty on a manufacturer to a bystander if the bystander is injured by a defective product *which is unreasonably dangerous to the ordinary user or consumer.*" (Emphasis added.) With this sentence, the court positively directed the jury to ignore any features that posed increased or unique risks to bystanders. As such, the instructions and special verdict question do not conform to Wisconsin law.

¶ 123. "The purpose of a jury instruction is to fully and fairly inform the jury of a rule or principle of law applicable to a particular case." *Nommensen v. Am. Continental Ins. Co.,* 2001 WI 112, ¶ 36, 246 Wis. 2d 132, 629 N.W.2d 301. The instruction should not only state the law accurately, but it should also "explain what the law means to persons who usually do not possess law degrees." *Id.* (quoting *Nowatske v. Osterloh,* 198 Wis. 2d 419, 428, 543 N.W.2d 265 (1996)). "[A]n instruction that is an incorrect or misleading statement of the law is erroneous." *Nowatske,* 198 Wis. 2d at 428.

¶ 124. The instruction did not fully and fairly inform the jury of the applicable law. Instead, it created the clear impression that a bystander could only recover if he was injured by a product that was also unreasonably dangerous to a user or consumer. However, in *Howes I,* the court held that "there is no essential difference between the injured user or consumer and the injured bystander," and that an injured

202

bystander could recover in strict liability for a product that is unreasonably dangerous to bystanders. 56 Wis. 2d at 255. Further, in *Komanekin v. Inland Truck Parts,* the court recognized that "a product not unreasonably dangerous to the ordinary user or consumer might well be unreasonably dangerous to the ordinary bystander." 819 F. Supp. 802, 809 (E.D. Wis. 1993) (applying Wisconsin law).

¶ 125. Instead of accurately describing Wisconsin law, the instruction directed the jury to answer the wrong question. The jury was directed to determine whether the lawn mower was unreasonably dangerous to users and consumers, yet the plaintiff made no argument that the mower was unreasonably dangerous to users and consumers.

¶ 126. Here, the majority appears to conclude that an otherwise defective instruction and special verdict question is cured because, after the jury was repeatedly told that defectiveness is determined by danger to "an ordinary user or consumer," the special verdict contained the following explanation:

> Before you can answer question One "yes," you must be satisfied that . . . the defective condition made the product unreasonably dangerous to people[.]"

¶ 127. An error is harmless if the beneficiary of the error proves "beyond a reasonable doubt that the error did not contribute to the verdict obtained." *State v. Hale,* 2005 WI 17, ¶ 60, 277 Wis. 2d 593, 691 N.W.2d 637 (quoting *Chapman v. California,* 386 U.S. 18 (1967)).

¶ 128. Based on the evidence presented at trial, the jury was required to answer "no" to the special verdict question because there was no evidence presented that the lawn mower was unreasonably danger-

ous to Michael, its user. Nevertheless, there was evidence from which a properly instructed jury could have determined that the mower was unreasonably dangerous to Jonathan. Because Deere & Company has not demonstrated that the errors did not contribute to the verdict obtained, I conclude that they were prejudicial.

## II

¶ 129. This is the second case this term where members of this court, sua sponte and not responding to the parties' arguments, have advocated for the adoption of the Restatement (Third) of Torts: Products Liability § 2(b). *See* Justice Gableman's concurrence; *see also Godoy v. E.I. du Pont de Nemours,* 2009 WI 78, ___ Wis. 2d ___, 768 N.W.2d 674 (Prosser, J., concurring) (released today). This would be a sea change in Wisconsin products liability law.

¶ 130. The Restatement (Second) of Torts § 402A and *Dippel v. Sciano,* 37 Wis. 2d 443, 155 N.W.2d 551 (1967) are established law in Wisconsin. Neither the parties in this case[1] nor the parties in *Godoy* have called upon the court to deviate from over 40 years of case law and adopt the Restatement (Third) § 2(b).

---

[1] Justice Gableman's concurrence asserts that the Horsts advocated for the adoption of the Restatement (Third) in a footnote in their reply brief. For a discussion of the "flimsy basis" upon which the concurrence reaches out to address the Restatement (Third), see Justice Crooks' concurrence, ¶ 84.

Any doubt as to whether the Horsts are advocating adoption of the Restatement (Third) is erased by a review of the oral arguments. No attorney uttered the words "Restatement (Third)" at oral argument. In fact, the Horsts' attorney specifically disclaimed any reliance on a risk-utility test, which is one of the principles underlying the Restatement (Third). He stated unequivocally: "I didn't argue for the adoption of a risk-utility test[.]" *See* Wisconsin Court System, Supreme Court Oral

¶ 131. In advocating for this policy change, the concurrence in this case and the concurrence in *Godoy* fundamentally misunderstand the role of an appellate court. Instead, they appear to act like legislators, advancing a policy initiative which they favor. Typically, it is the role of the legislature to identify and enact policy initiatives. Appellate courts, on the other hand, play a more restrained role.

¶ 132. Courts decide cases and controversies. A court depends upon the parties to identify and raise issues and to advocate for a position. After considering the parties' briefs and arguments, the court renders a decision.

¶ 133. Tossing stare decisis to the wind and without the benefit of briefing or argument by the parties, the concurrence would overrule or otherwise modify scores of cases because they set forth a test for products liability that would no longer be good law.[2] Of course

---

Arguments, http://wicourts.gov/opinions/soralarguments.htm (search "Party name" for "Horst"; then follow "Playback" link) at 26:35.

[2] *See, for example:*

- *Tatera v. FMC Corp.*, 2009 WI App 80, ___ Wis. 2d ___, 768 N.W.2d 198 (publication decision pending);

- *Haase v. Badger Mining Corp.*, 2004 WI 97, 274 Wis. 2d 143, 682 N.W.2d 389;

- *Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, 245 Wis. 2d 772, 629 N.W.2d 727;

- *Insolia v. Philip Morris, Inc.*, 216 F.3d 596 (7th Cir. 2000) (applying Wisconsin law);

- *Morden v. Continental AG*, 2000 WI 51, 235 Wis. 2d 325, 611 N.W.2d 659;

- *Sharp ex rel. Gordon v. Case Corp.*, 227 Wis. 2d 1, 595 N.W.2d 380 (1999);

the court can and sometimes should overrule prior cases. See Justice Gableman's concurrence, ¶ 104 n.9.

- *Bittner v. American Honda Motor Co., Inc.,* 194 Wis. 2d 122, 533 N.W.2d 476 (1995);

- *Westphal v. E.I. du Pont de Nemours & Co., Inc.,* 192 Wis. 2d 347, 531 N.W.2d 386 (Ct. App. 1995);

- *Sedbrook v. Zimmerman Design Group, Ltd.,* 190 Wis. 2d 14, 526 N.W.2d 758 (Ct. App. 1994);

- *Estate of Cook v. Gran-Aire, Inc.,* 182 Wis. 2d 330, 513 N.W.2d 652 (Ct. App. 1994);

- *Rogers v. AAA Wire Prods., Inc.,* 182 Wis. 2d 263, 513 N.W.2d 643 (Ct. App. 1994);

- *Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.,* 176 Wis. 2d 740, 501 N.W.2d 788 (1993);

- *Glassey v. Continental Ins. Co.,* 176 Wis. 2d 587, 500 N.W.2d 295 (1993);

- *Northridge Co. v. W.R. Grace and Co.,* 162 Wis. 2d 918, 471 N.W.2d 179 (1991);

- *Kolpin v. Pioneer Power & Light Co., Inc.,* 162 Wis. 2d 1, 469 N.W.2d 595 (1991);

- *Nelson v. Nelson Hardware, Inc.,* 160 Wis. 2d 689, 467 N.W.2d 518 (1991);

- *Rolph v. EBI Cos.,* 159 Wis. 2d 518, 464 N.W.2d 667 (1991);

- *Kemp v. Miller,* 154 Wis. 2d 538, 453 N.W.2d 872 (1990);

- *Estate of Schilling v. Blount, Inc.,* 152 Wis. 2d 608, 449 N.W.2d 56 (Ct. App. 1989);

- *Tony Spychalla Farms, Inc. v. Hopkins Agr. Chemical Co.,* 151 Wis. 2d 431, 444 N.W.2d 743 (Ct. App. 1989);

- *St. Clare Hosp. of Monroe v. Schmidt, Garden, Erickson, Inc.,* 148 Wis. 2d 750, 437 N.W.2d 228 (Ct. App. 1989);

- *O'Brien v. Medtronic, Inc.,* 149 Wis. 2d 615, 439 N.W.2d 151 (Ct. App. 1989);

- *Mulhern v. Outboard Marine Corp.,* 146 Wis. 2d 604, 432 N.W.2d 130 (Ct. App. 1988);

That is not the question here. Rather, the question is whether the court here *should* overrule or modify these

- *Griffin v. Miller,* No. 1986AP1562, unpublished slip op. (Wis. Ct. App. Oct. 1, 1987);

- *Van's Realty Const. of Appleton, Inc. v. Blount Heating and Air Conditioning, Inc.,* No. 1985AP1812, unpublished slip op. (Wis. Ct. App. Oct. 7, 1986);

- *Clarke v. Flad & Associates,* 1984AP780, unpublished slip op. (Wis. Ct. App. Jan. 27, 1988);

- *Gonzalez v. City of Franklin,* 128 Wis. 2d 485, 383 N.W.2d 907 (Ct. App. 1986);

- *Sumnicht v. Toyota Motor Sales, U.S.A., Inc.,* 121 Wis. 2d 338, 360 N.W.2d 2 (1984);

- *Collins v. Eli Lilly Co.,* 116 Wis. 2d 166, 342 N.W.2d 37 (1984);

- *Burrows v. Follett and Leach, Inc.,* 115 Wis. 2d 272, 340 N.W.2d 485 (1983);

- *Giese v. Montgomery Ward, Inc.,* 111 Wis. 2d 392, 331 N.W.2d 585 (1983);

- *Krueger v. Tappan Co.,* 104 Wis. 2d 199, 311 N.W.2d 219 (Ct. App. 1981);

- *Wangen v. Ford Motor Corp.,* 97 Wis. 2d 260, 294 N.W.2d 437 (1980);

- *Shawver v. Roberts Corp.,* 90 Wis. 2d 672, 280 N.W.2d 226 (1979);

- *Priske v. General Motors Corp.,* 89 Wis. 2d 642, 279 N.W.2d 227 (1979);

- *Black v. General Elec. Co.,* 89 Wis. 2d 195, 278 N.W.2d 224 (Ct. App. 1979);

- *Ransome v. Wisconsin Elec. Power Co.,* 87 Wis. 2d 605, 275 N.W.2d 641 (1979);

- *Kozlowski v. John E. Smith's Sons Co.,* 87 Wis. 2d 882, 275 N.W.2d 915 (1979);

- *Keller v. Welles Dep't. Store of Racine,* 88 Wis. 2d 24, 276 N.W.2d 319 (Ct. App. 1979);

- *Austin v. Ford Motor Co.,* 86 Wis. 2d 628, 273 N.W.2d 233 (1979);

cases, creating a sea change in the law, without the benefit of briefing or arguments by the parties.

¶ 134. I am uncertain whether the Restatement (Third) should be adopted. What I am certain of, however, is that rather than pushing a predetermined agenda, I would wait until the issue is raised by a party, and briefed and argued before this court.

- *Fonder v. AAA Mobile Homes, Inc.*, 80 Wis. 2d 3, 257 N.W.2d 841 (1977);

- *Heldt v. Nicholson Mfg. Co.*, 72 Wis. 2d 110, 240 N.W.2d 154 (1976);

- *Howes v. Deere Co.*, 71 Wis. 2d 268, 238 N.W.2d 76 1976);

- *Barter v. General Motors Corp.*, 70 Wis. 2d 796, 235 N.W.2d 523 (1975);

- *Greiten v. LaDow,* 70 Wis. 2d 589, 235 N.W.2d 677 (1975);

- *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.*, 69 Wis. 2d 326, 230 N.W.2d 794 (1975);

- *Schuh v. Fox River Tractor Co.*, 63 Wis. 2d 728, 218 N.W.2d 279 (1974);

- *Jagmin v. Simonds Abrasive Co.*, 61 Wis. 2d 60, 211 N.W.2d 810 (1973);

- *City of Franklin v. Badger Ford Truck Sales, Inc.*, 58 Wis. 2d 641, 207 N.W.2d 866 (1973);

- *Air Prods. & Chemicals, Inc. v. Fairbanks Morse, Inc.*, 58 Wis. 2d 193, 206 N.W.2d 414 (1973);

- *Gies v. Nissen Corp.*, 57 Wis. 2d 371, 204 N.W.2d 519 (1973);

- *Howes v. Hansen,* 56 Wis. 2d 247, 201 N.W.2d 825 (1972);

- *Schnabl v. Ford Motor Co.*, 54 Wis. 2d 345, 195 N.W.2d 602 (1972);

- *Netzel v. State Sand & Gravel Co.*, 51 Wis. 2d 1, 186 N.W.2d 258 (1971).

- *Dippel v. Sciano,* 37 Wis. 2d 443, 155 N.W.2d 55 (1967) (adopting the Restatement (Second) § 402A and strict products liability).

208

¶ 135. For a more thorough discussion of my concerns regarding the sua sponte discussion ·of the Restatement (Third), see my concurrence in *Godoy*, ___ Wis. 2d ___.

¶ 136. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.